473 A.2d 970

George R. COTTER

v.

Alberta E. COTTER.

No. 962, Sept. Term, 1983.

Court of Special Appeals of Maryland.

April 12, 1984.

530

Leonard E. Moodispaw, Annapolis, with whom were Blumenthal, Delavan, Offutt & Moodispaw, P.A., Annapolis, on the brief, for appellant.

Ann M. Fligsten, Severna Park, for appellee.

Argued before WILNER, ALPERT and BLOOM, JJ.

BLOOM, Judge.

By decree dated April 5, 1983, the Circuit Court for Anne Arundel County granted the appellee, Alberta E. Cotter, a divorce *a vinculo matrimonii* from the appellant, George R. Cotter. The decree also awarded Mrs. Cotter alimony of $800 per month "during the joint lives of the parties or until the Wife shall remarry" and a monetary award, reduced to judgment, in the amount of $184,828.80 plus interest to accrue thereon. Appellant was ordered to pay the judgment

in fifteen equal annual installments of $12,321.92 plus judgment interest, with the first payment due April 1, 1984. The court denied appellee's request for counsel fees but assessed all costs against appellant.

In this appeal, appellant makes the following contentions:

(1) The court erroneously awarded alimony and entered a monetary award without considering all of the factors prescribed by Maryland Courts and Judicial Proceedings Code Annotated, Section 3–6A–05 and Article 16, Section 1.

(2) The court erred in not crediting plaintiff with one-half of the mortgage payments which he made between the separation date and the judgment date.

(3) The trial court erroneously evaluated plaintiff's pension as of the date of judgment, rather than the date of separation.

(4) The court abused its discretion in awarding to defendant a lump-sum portion of plaintiff's pension before plaintiff retires.

(5) The court erred in admitting expert testimony upon less than twenty-four hours notice to the adverse party, when the calling party had been in consultation with the expert for over thirty days before giving notice of same and after the court learned that the expert's testimony was based upon admittedly incomplete data.

(6) The trial court abused its discretion in allocating certain costs to the plaintiff which the court found to have been unnecessarily incurred by defendant.

We will discuss these contentions in a somewhat different order than appellant presented them.

## FACTS

The husband initiated the divorce proceedings alleging a voluntary separation since October 1976. The wife filed a cross-bill alleging desertion since October 1976 and adultery.

The parties were married in August 1950, when the husband was 22 years of age and the wife was 20. Both had high school educations and both were employed. Shortly after the marriage, the husband was recalled to active military duty. After his discharge, he and the wife both secured employment at National Security Administration.

The parties had two children, a son born in 1954 and a daughter born the following year. Both children died in infancy. They adopted a daughter in 1959, and the wife quit work to remain at home and care for the child. They later adopted twin boys. At the time of the divorce, all of the children were adults.

The parties purchased a large home in Anne Arundel County. For many years there was domestic tranquility. Mrs. Cotter remained at home caring for the children and performing other domestic duties. Mr. Cotter attended school at night and eventually obtained a master's degree while continuing to work at N.S.A. He is now the Chief of Staff for that agency. With over 34 years of service in the Federal Employees Retirement System, he is eligible to retire this year at age 55. If he were to retire, he would receive $37,745 per year. In 1982 his salary was $58,500 plus a $10,000 bonus. At the time of trial he was expecting a raise in salary.

Marital problems arose in July 1976. The husband left the home in November of that year and stayed with friends until he secured an apartment the following February. The husband became romantically involved with his secretary. Although the wife suspected that the husband was guilty of adultery prior to the separation and accused him of adultery, the first proven act of adultery was in February 1977.

The chancellor found that the husband's leaving the marital home in November 1976 was the fault that destroyed the marriage.

The separation continued from November 1976 to the date of trial. During that period of time, the husband contributed about $750 per month in support for the wife in addition

to paying substantial sums for the children's educations. The wife is now employed at an annual gross salary of $15,700 with a bi-weekly take home pay of $404.70. Her chances for advancement are slight. If she continues working, she can retire at age 65 at $640 per month, including social security.

In addition to the home in Anne Arundel County and its furnishings, the parties jointly own unimproved land in Colorado. There was a stipulation as to fair market values of certain property: $100,000 net for the house; $2500 for the furnishings; $4000 for a 24 foot boat owned by the husband; $500 for a 1974 Ford automobile and $600 for a 1973 Chrysler, both owned by the husband; and $5479.28 for jointly owned stocks. The parties agreed upon a division of the furniture and an equal partition of the Colorado real estate. Mr. Cotter would keep the Chrysler and give the Ford to Mrs. Cotter. The house was to be sold and the net proceeds divided equally.

The principal marital property was the husband's government pension or retirement plan. On the basis of expert testimony produced by the wife, the present value of the pension was found to be $498,630 of which the marital portion was valued at $458,072.

I

Appellant complains that in awarding alimony and granting a monetary award the chancellor ignored some of the factors that, by statute, he was obliged to consider.

Maryland Cts. and Jud.Proc.Code Ann., § 3–6A–05(a) provides that in granting an absolute divorce or annulment, or at any time within 90 days thereafter, if in the decree the court has expressly reserved the power to do so, "the court *shall* determine which property is marital property if the division of property is an issue." (Emphasis added). Subsection (b) provides that "[t]he court *shall* determine the value of all marital property. After making the determination the court *may* grant a monetary award as an adjust-

ment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded." (Emphasis added). In determining the amount of the award and the manner of its payment, the court is required to consider each of nine separately enumerated factors, expressly including "any award of alimony."

As a corollary, in awarding alimony the court must consider, among other relevant factors, the financial needs and resources of both parties, including "[a]ny award made under §§ 3–6A–05 and 3–6A–06 of the Courts and Judicial Proceedings Article; ..." Md.Code Ann. art. 16, § 1(b)(1)(ii).

■ Whether to grant a monetary award under § 3–6A–05 is discretionary, as is the amount of the award and its method of payment, so long as the chancellor considers the nine statutory factors. *Grant v. Zich,* 53 Md.App. 610, 614, 456 A.2d 75 (1983), *cert. granted,* 296 Md. 110 (1983); *Ward v. Ward,* 52 Md.App. 336, 449 A.2d 443 (1982). If a chancellor decides to make a monetary award, however, he is required to follow two procedures mandated by § 3–6A–05 in addition to considering the nine factors: he must determine which property is marital property if the division of property is an issue, and he must then determine the value of all marital property. *Grant v. Zich, supra,* 53 Md.App. at 614, 456 A.2d 75.

As the Court of Appeals pointed out in *Deering v. Deering,* 292 Md. 115, 129, 437 A.2d 883 (1981), § 3–6A–05 provides the chancellor with the necessary flexibility to devise a fair marital property adjustment, but "the law *commands* the trial court both to 'determine which property is marital property,' if its division is an issue, and to 'determine the value of all [such] marital property,' ...." (Emphasis added). Furthermore, § 3–6A–05(b)(8) requires the chancellor to give due consideration to any alimony decreed before making a monetary award. *Id.* at 131, 437 A.2d 883.

■ In the case *sub judice,* the chancellor failed to heed the commands of § 3–6A–05. After recognizing that the

house, the household furnishings, the two automobiles, and the Colorado land fall within the definition of marital property, the chancellor gave them no further consideration, commenting that "they have been disposed of by agreement of the parties." The only assets valued and considered for the purpose of making a monetary award were the husband's pension, the jointly owned stock, and the boat. The chancellor apparently concluded that assets which the parties agree to divide equitably between them need not be regarded as factors to be considered in making a monetary award, but the statute requires the inclusion and evaluation of *all* marital property. Unless all marital properties are taken into account, the chancellor cannot properly consider all of the nine factors enumerated in § 3–6A–05(b) in determining a fair and equitable award. The nature and extent of all property owned by each spouse and the financial condition of each spouse at the time of the award are two of those statutory factors. § 3–6A–05(b)(2) and (3). The cars and the furniture, stipulated to be worth an aggregate total of $3600, might have little significance in the overall picture, but a house stipulated to be worth $100,000[1] and twenty acres of land in Colorado acquired for $13,500 several years ago are significant items of property that should be taken into account.

Since the chancellor failed to comply with § 3–6A–05(b) by considering and valuing all marital property, we will vacate the monetary award.

## II

■ We can give short shrift to the contention that the chancellor erred in evaluating appellant's pension as of the date of judgment rather than the date of the parties' separation. Our recent decisions in *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984), and *Gravenstine v. Gra-*

---

1. It is not clear whether $100,000 was intended to reflect market value, subject to a lien of $3500, or the net equity value after subtracting the lien from the market value.

*venstine,* 58 Md.App. 158, 472 A.2d 1001 (1984) now make it clear that marital property is to be determined and valued as of the date of divorce, not the date of separation. In fairness to appellant's counsel, we must note that *Dobbyn* and *Gravenstine* were decided after the briefs were filed in this case.

### III

The assertion that the court abused its discretion in awarding to the appellee a lump-sum portion of appellant's pension before appellant retires is an overly simplified condensation of a broad claim that under all of the circumstances, including the award of alimony, it was an abuse of discretion for the chancellor to grant the monetary award of $184,824.80, reduce it to judgment, and order it to be paid in fifteen annual installments beginning one year after the date of the decree.

■ Mr. Cotter's vested government pension rights, to the extent that they were acquired during the marriage, constitute "Marital Property" under § 3–6A–05 of the Courts and Judicial Proceedings Article of the Code. *Deering v. Deering, supra.*

Having properly determined that appellant's pension rights constituted marital property, the chancellor proceeded to fix its value and determine how to allocate it between the parties. As the Court of Appeals pointed out in *Deering,* there were various alternatives available to the chancellor. The Court noted that the more salient of these alternatives were summarized by the Supreme Court of Wisconsin in *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235, 238 (1978), as follows:

"First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share .... Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the

future would have to be discounted for interest in the future, for mortality ... and for vesting .... The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc. ... It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation....

Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely ... is to determine a fixed percentage for [the wife] of any future payments [the husband] received under the plan, payable to her as, if, and when paid to [the husband] .... Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled."

*Deering,* 292 Md. at 130, 131, 437 A.2d 883 (citations omitted).

In this case, the chancellor made a determination of the present value of appellant's pension rights, granted a monetary award based largely on that value, and reduced the award to a judgment which the appellant was directed to pay, with interest, in fifteen annual installments. He chose that method over the other available alternatives despite the uncertainties inherent in calculating the present value of the husband's future retirement benefits. Although the present value is necessarily dependent upon such matters as Mr. Cotter's life expectancy, his future health and other factors that will affect his decision as to when to retire, fluctuations in interest rates and cost of living indices, and future congressional actions regarding cost of living adjustments

(or, possibly, merger of the Federal Employees Pension System into the Social Security System), the chancellor was apparently satisfied that the wife's expert witness had taken all of these variables into account in arriving at an actuarial calculation of the present value of the pension. Appellant does not contend that the chancellor's evaluation was wrong and, indeed, since there is evidence to support it, it is certainly not clearly erroneous. Rule 1086. Nor does the appellant assert error in the chancellor's choice of the "calculation of present value" method over the "contribution plan plus interest" method. Compare *Grant v. Zich, supra,* in which we approved the chancellor's evaluation of the pension on the basis of the husband's contributions only. In that case the evidence available to the chancellor related only to the husband's contributions to the fund.

Appellant's complaint is that even though the valuation of his pension cannot be assailed the amount of the monetary award based thereon and the manner in which that award must be paid, when considered in light of the alimony award and all other statutory factors, mounts up to an abuse of discretion.

Mr. Cotter's gross bi-weekly salary was $2250.40. After deductions for life insurance, health insurance, mandatory retirement contribution, credit union, federal income tax, and state income tax, his bi-weekly paycheck was in the amount of $1075.36. Counting the $160.00 deduction for payment into his savings account at the credit union, we note that Mr. Cotter's total disposable income is $1235.36 bi-weekly, $32,199.36 annually. Out of that total sum, the chancellor ordered Mr. Cotter to pay alimony of $800.00 per month or $9600.00 per year, an annual principal payment of $12,321.92 on the marital award judgment, *and* interest (10 percent per annum) on the unpaid balance of the judgment. The first year's interest would amount to $18,482.88. Thus, out of a total net income of $32,119.36, the appellant was ordered to pay to the appellee $40,414.80. We recognize, of course, that the alimony and interest payments would be tax deductible items; but even taking that into account as well

as the prospects for additional bonuses and increases in salary, Mr. Cotter would be left with little or nothing to cover his own necessary expenses for food, clothing, shelter and transportation if he continued to work. If he were to retire—and his ability to retire this year was a major factor in the evaluation of the pension—his obligations to the appellee under the decree would greatly exceed his *gross* income. Obviously, he could not afford to retire; and unless he retires, *he* will derive no benefit from the pension which the court valued at $458,072 for the purpose of the monetary award.

Appellant argues that this grossly inequitable result should have been avoided by determining a fixed percentage for appellee of any future payments he receives under his pension plan, payable to her if, as and when they are paid to him. Such method of adjusting the equitable rights of one spouse in the pension benefits of the other spouse was certainly one of the alternatives available to the chancellor. *Deering v. Deering, supra; Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981). Indeed, that method may be recommended in those instances where it is difficult to place a present value on the pension due to uncertainties regarding vesting or maturation, or when (as in this case) the present value can be ascertained but the type, or lack, of other marital property makes it impractical to award offsetting marital property to the non-employee spouse. *Ohm,* 49 Md.App. at 406–407, 431 A.2d 1371. The percentage of pension payment "if, as and when" received by the employee spouse would avoid inequities arising out of miscalculations of value.

■ The fact that an award of a percentage of pension payments "if, as and when received" is an available method for distributing retirement benefits as marital property (one which will prevent, eliminate or minimize certain types of inequities) does not mandate the adoption of that method in any case. As *Deering, Ohm,* and *Grant* make clear, the chancellor has broad discretion not only with respect to

evaluating pension or retirement benefits as marital property but also in the manner of distributing them. In this case, the chancellor considered the method advocated by appellant for distributing the pension benefits. He rejected that method because (1) appellant might never retire or might postpone retirement for a long time; (2) the pension is vested and appellant will be eligible to receive it this year if he so chooses; and (3) the pension has a definite, ascertainable present-day value. That decision, standing alone, would not be an abuse of discretion.

Nor would the award of $800 per month alimony for an indefinite period, by itself, constitute an abuse of discretion. Considering the differences in the parties' incomes, the amount awarded would certainly not be excessive. Indeed, as alimony (and therefore tax deductible) it is actually less than appellant had been contributing to appellee's support since the separation. Since there is little likelihood that appellee's earning capacity will ever approach that of appellant, there is justification for making the alimony indefinite as to duration. Article 16, § 1(c)(1)(ii) provides that the court may award alimony for an indefinite period when it finds that "[e]ven after the receiving party will have made as much progress toward self-support as can reasonably be expected, the respective standards of living of the two parties will be unconscionably disparate."

The combination of the award of alimony and the marital award reduced to judgment, however, creates such an inequitable result as to amount to a clear abuse of discretion by the chancellor. As we have previously noted, he did not consider the value of all marital property in making the monetary award. The result achieved by the decree, granting the wife alimony plus a monetary award in such amounts and payable in such manner as to exceed the husband's income, clearly indicates that he did not take into account all of the statutory factors in granting both alimony and the monetary award. In awarding alimony, the chancellor could not conceivably have given due consideration, as

required by Art. 16, § 1(b), to such factors as all income and assets of both parties; the monetary award of over $184,000, reduced to a judgment payable in annual installments; the nature and amount of the financial obligations of each party; and the ability of the husband to meet his needs while meeting those of the wife. In making the monetary award and reducing it to judgment, the chancellor could not conceivably have given due consideration, as required by § 3–6A–05(b) of the Courts and Judicial Proceedings Article, to such factors as the value of all property interests of each spouse and the award of alimony.

We find it necessary, therefore, to vacate the award of alimony as well as the monetary award. In remanding these matters to the chancellor for reconsideration, it is not our intention to restrict or limit his options with respect to alimony or monetary award. We merely suggest that an award of indefinite alimony would in no way be inconsistent with a monetary award based upon a distribution of the husband's retirement benefits if, as and when he receives them. If the chancellor still deems it fairer to the wife to grant her a monetary award based upon the present value of the husband's pension rights and payable before he retires, § 3–6A–05(c) *permits* but does not *require* that such award be reduced to judgment. But if the chancellor deems it just and equitable to grant a monetary award and reduce it to a judgment, he should at least consider that the wife's receipt of judgment interest may obviate her need for alimony.

IV

Appellant testified that he had paid the mortgage payments on the marital home since the date the parties separated. According to his calculations, the total so paid from November 1976 to the time of trial, including taxes and insurance as well as mortgage principal and interest, was $24,165. No claim for reimbursement had been asserted in the pleadings. The parties had entered into a stipulation to the effect that the home would be sold and the net proceeds, after satisfaction of the mortgage and after payment for

any repairs made pursuant to their joint approval, would be divided equally. During closing argument to the chancellor, however, appellant's counsel made a passing reference to "contribution" while attempting to persuade the court that Mrs. Cotter would not require alimony.

> I believe once the house has [been] sold and the substantial proceeds of that are divided between the families and any marital property award the Court makes in the way of—looking at the retirement plan, minus Mr. Cotter's contribution for the payment of the mortgage, will leave Mrs. Cotter with a sizeable chunk of money. Added to her salary at a good job, I simply don't think any alimony is required.

Appellant's counsel subsequently submitted a written memorandum in the form of a letter, in which he contended that the stipulation regarding division of the proceeds from the sale of the house was subject to the ruling on his claim for contributions.

Reasoning that Mr. Cotter was not entitled to credit for the mortgage payments he made after the separation because he voluntarily left the house, *i.e.,* was not ousted from possession, and because the mortgage payments were a form of support for the wife for which the husband was obligated, the chancellor allowed appellant no credit for these payments except that which he was to receive as provided in the stipulation in which the parties agreed to divide the net proceeds from the sale of the house equally between them.

■ In the absence of the stipulation, appellant would clearly be entitled to contribution for the mortgage payments he made after the separation. There is no basis to presume an intent to make a gift during that period of time and payment of the mortgage, taxes and insurance was necessary to preserve the property for the benefit of both parties as tenants by the entireties. *See Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982); *Colburn v. Colburn,* 265 Md. 468, 290 A.2d 480 (1972). The stipulation, however, precludes appellant from recovering any contribution from

appellee. The parties expressly agreed upon a disposition of the former marital home that is inconsistent with the belated assertion of a claim for contributions, and there is nothing in the record to support the contention that the stipulation was conditional upon or subject to any ruling as to contributions.

V

On the day before the trial, counsel for appellant was furnished with the name of appellee's expert witness as to valuation of appellant's pension rights. Appellant promptly filed a motion *in limine* to prohibit the witness from testifying. The expert submitted a written report to appellee's attorney on the day of trial. Appellant's counsel was then given a copy of it. The motion *in limine* was renewed when the expert was called to the stand, and appellant duly objected to his being allowed to testify. The court denied appellant's motion and overruled his objection.

Well in advance of trial, appellant had propounded interrogatories to appellee. Interrogatory No. 13 asked the name, address and field of expertise of any expert that appellee proposed to call as a witness and requested a copy of any written report submitted by that expert. Answer No. 13 was "Valerie Nash, daughter," which was obviously not responsive to the interrogatory. It appears, however, from correspondence between counsel that appellant was aware that appellee intended to call someone as an expert witness to put a value on appellant's pension rights. Appellee's counsel blamed the fact that the expert did not submit a written report until the day of trial on appellant's failure to furnish certain requested information about his pension until four days prior to trial.

Although appellant complained that he was being prejudiced by the lack of advance notice of the identity of the expert and the substance of his proposed testimony, he made no request for postponement. Appellee had unsuccessfully sought a delay in bringing the case to trial, and appellant

did not want her failure to comply with the discovery rules to be rewarded by granting her the continuance she could not otherwise obtain. That, of course, was a tactical decision on his part. The court offered to permit appellant to submit his own expert witness evidence at a later date; but appellant rejected that proposal, contending that conflicting expert opinions would be of little help to the court and the opportunity to present such conflict would not cure the prejudice that resulted from an inability to prepare for cross-examination of appellee's expert. We note, however, that appellant did not request even a brief recess to study the expert's written report or to question the expert informally about his report. Such a request, if made and granted, might well have alleviated the prejudice appellant claims to have suffered.

 Unlike the defendant's blatant violations of the discovery rules in *Hadid v. Alexander,* 55 Md.App. 344, 462 A.2d 1216 (1983), appellee's failure to identify the expert and furnish a copy of his report before the trial was not willful or contumacious. A trial judge is vested with a large measure of discretion in applying sanctions for failure to comply with the discovery rules. We see no abuse of discretion in denying the motion in limine and permitting the expert to testify with an offer to appellant of an opportunity to obtain his own expert at a later date. *See Starfish Condominium Assoc. v. Yorkridge Service Corp.,* 295 Md. 693, 458 A.2d 805 (1983).

## VI

 Appellant asserts that the chancellor abused his discretion in assessing all costs in the case against him. He complains about the costs of two depositions and a private process server. He failed to specify the nature of his complaint about the process server; his argument about the costs of the depositions is that they were not admitted into evidence, one of them being characterized by the chancellor as "not even worth arguendo," and that the attempted use

of one deposition violated an agreement between counsel. There is nothing in the record to support the latter contention. With respect to the former, the necessity for and worth of a deposition is not measured by its admissibility as evidence. The "not even worth arguendo" comment by the court referred to appellee's proposed use of the deposition at the trial, not with the reason for taking it. In short, there was no finding that the expenses of which appellant complains were unreasonable or unnecessary. Consequently, the chancellor did not abuse his discretion in assessing those costs against appellant.

DECREE AFFIRMED AS TO AWARD OF DIVORCE TO APPELLEE, DISMISSAL OF APPELLANT'S CROSS-BILL OF COMPLAINT, DENIAL OF COUNSEL FEES, AND ASSESSMENT OF COSTS;

DECREE VACATED AS TO AWARD OF ALIMONY AND GRANT OF MONETARY AWARD AND JUDGMENT THEREON;

CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.