493 A.2d 1096

**Paul Stanley ZORICH**

v.

**Betty Lou ZORICH.**

**No. 1492, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 13, 1985.

T. Bruce Hanley, Towson, for appellant.

T. Joseph Touhey, Glen Burnie, for appellee.

Argued before WEANT, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We are asked to answer two questions presented by this appeal from the judgment of the Circuit Court for Anne Arundel County:

1. Whether the trial court erred in granting Appellee a marital award more than ninety days after the court granted Appellee a divorce a vinculo matrimonii?

2. Whether the trial court erred in granting Appellee alimony for an indefinite period as provided in Article

16, § 1(c)(1)(i) and (ii) of the Annotated Code of Maryland?

Our answer to both questions is "no"; therefore, we will affirm.

### 1.

Following a trial on the amended bill of complaint for divorce a vinculo matrimonii filed by Betty Lou Zorich, appellee, and the Cross-Bill filed by Paul Stanley Zorich, appellant, the Circuit Court for Anne Arundel County, on February 27, 1984, in an oral opinion, decided to grant appellee's prayer for divorce and to reserve, for the statutory period, issues related to marital award, alimony, and counsel fees. The Decree embodying the oral opinion was filed on March 22, 1984, providing, in relevant part:

> It Is Further Adjudged, Ordered And Decreed, that for a period of ninety (90) days from the date of this Decree pursuant to Courts and Judicial Proceedings Article § 3–6A–05(a),[1] this Honorable Court reserves the power to grant a monetary award to either of the parties hereto if any ...

A hearing was held on May 28, 1984 pursuant to this reservation. At the conclusion of the hearing, the trial judge rendered an oral opinion, in which he made findings of fact and awarded appellee a marital award, 40% of appellant's pension as received,[2] alimony for an indefinite

---

**1.** § 3–6A–05. Monetary award.

(a)(1) In granting an absolute divorce or annulment, or at any time within 90 days thereafter, if in its decree granting the divorce or annulment the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue. If the court has reserved the power to make the determination, the court may within the time reserved further extend the time for making the determination with the consent of the parties.

**2.** The decree also provided that appellee be awarded 40% of appellant's pension as received in addition to a monetary award. The issue has not been raised on this appeal, but it is important to point out that a portion of a pension may not be transferred from one party to

period, and counsel fees. Counsel for appellee was then directed to draft the decree and submit it to the court for signature. The supplemental decree incorporating this opinion was not filed until July 12, 1984,[3] 22 days after the expiration of the 90 day period.

Prior to the expiration of the 90 day period, counsel communicated with each other relative to the supplemental decree. On June 4, 1984, counsel for appellant received appellee's proposed supplemental decree, with which he disagreed. On June 8, 1984, counsel for appellant forwarded to counsel for appellee a draft of a supplemental decree acceptable to his client and suggested court intervention. Thereafter, on July 9, 1984, appellee's counsel submitted both draft decrees to the court with the request that the court "resolve the issue". Presumably, because he was advised by the court that his draft was acceptable, counsel for appellee forwarded, on July 10, 1984 the original of his draft to the court for signature which, as previously indicated, was then filed by the court two days later.

Appellant's position concerning the "lateness" of the supplemental decree was made known to the court in a letter dated July 13, 1984. In that letter, he noted that the decree was filed more than 90 days after the original decree was filed and that "[a]t no time did I consent to an extension of time period". His motion to revise or strike the supplemental decree on those grounds was denied without hearing.

Pointing out that orders and decrees of an equity court must be in writing and signed by the equity judge, *Glass v. Glass*, 284 Md. 169, 395 A.2d 485 (1978), *Tvardek v. Tvardek*, 257 Md. 88, 261 A.2d 762 (1970), and that § 3–6A–

---

another. The court, however, may grant a monetary award payable as and when the pension is received and expressed in terms of a percentage of the pension benefits. *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981).

3. Although the court dated the supplemental decree 5/29/84, it is undisputed that the decree was not signed by the judge until after July 10, 1984.

05(a)(1) is mandatory, appellant argues that the failure of the trial judge to sign and file the supplemental decree within 90 days rendered the supplemental decree a nullity since the court lost jurisdiction to act. Thus, appellant contends that when counsel is directed to draft a decree and that decree is not filed within the 90 day period, counsel is at fault and the court, although it has made the "determination" orally, loses its power to execute and file a binding and effective decree incorporating that determination. For this extraordinary proposition, appellant relies on *Brodak v. Brodak*, 294 Md. 10, 447 A.2d 847 (1982).

*Brodak* does not support appellant's position. There, the decree designating marital property was filed on the 91st day after the divorce decree was filed. The husband, relying on *Russell v. Russell*, 50 Md.App. 185, 436 A.2d 524 (1981),[4] argued that the court had lost jurisdiction to make a marital award. The Court of Appeals disagreed. While agreeing that the parties could not confer jurisdiction on the court where none existed, it "disagree[d] with the concept that because of the delay 'the court lost jurisdiction and [for that reason] any determination[s] thereafter concerning the appellee's pension rights were nugatory.' " *Id.* 294 Md. at 14, 436 A.2d 524. Relying on *Stewart v. State*, 287 Md. 524, 413 A.2d 1337 (1980) and *Pulley v. State*, 287 Md. 406, 412 A.2d 1244 (1980), the court found that the circuit court was not deprived of subject matter jurisdiction because,

> There is nothing in the statute here to indicate an intent on the part of the General Assembly to strip the Court of its jurisdiction relative to marital property after the lapse

---

4. In *Russell,* the court reserved the issue of monetary award on August 26, 1980, the hearing on the issue was held on November 24, 1980, and the decree filed December 29, 1980. The parties agreed to extend the time for the determination to beyond the 90 day period. The court's failure to designate the marital property within 90 days was held to have rendered its determination a nullity, the court having lost jurisdiction. "The parties could not confer jurisdiction by consent where the jurisdiction did not exist. . . ." *id.* at 187, 436 A.2d 524.

In apparent response to *Russell,* ch. 294, Acts of 1982 was enacted. It added the last sentence of § 3–6A–05(a)(1).

of ninety days from the date the decree was entered. The statute does not state that if a Court, under the circumstances here, grants an absolute divorce it shall have jurisdiction only for a period of ninety days. Rather, it says that in granting a divorce "or at anytime within 90 days thereafter [under certain circumstances] the court shall determine which property is marital property. . . .

*id.* 294 Md. at 16, 436 A.2d 524. The Court then concluded: (at 24–5, 436 A.2d 524)

In our view the word "shall" in the statute is mandatory. *Russell*, 50 Md.App. 185, 436 A.2d 524 thus was correctly decided because the parties there were at fault; in that circumstance the sanction was properly imposed. That does not dispose of the matter, however. When a statute of limitations specifies that a proceeding must be brought within a certain period of time, it is the failure of the party initiating the proceeding to act within that time frame which bars the action. When a rule or statute says that an appeal must be filed within a stated period of time and the appeal is dismissed for failure to comply, it is the party entering the appeal who is guilty of delay. The position that the husband would have us take would be to impose a sanction on the parties for the failure of the arbiter of the controversy, in this instance the circuit court, to act within the period prescribed by statute. Since it is the husband, not the wife, who is dissatisfied with the chancellor's award, the practical effect were we to adopt the husband's position would be to place the sanction for the chancellor's failure to act within the specified time upon the prevailing party, the wife. We think that result would be wrong. Absent a mandate from General Assembly similar to that in *Scherr*, 211 Md. 553 [211 A.2d 388], in light of the peculiar facts and circumstances there present, we decline to impose such a sanction here.

■ Thus, it is neither the lapse of time, nor the mandatory nature of § 3–6A–05(a)(1) which is controlling; rather, it

is the responsibility for the delay. The responsibility for making the determination required by the statute and for filing the decree embodying that determination rests with the trial judge. That responsibility is not, and cannot be, shifted to a party by a direction from the judge that that party draft or prepare the decree. We will not, under these facts shift, the burden of the court's failure to act[5] to the prevailing party.

### 2.

Appellant also attacks the trial court's award of alimony for an indefinite period of time on two grounds: first, the court's failure to articulate the reasons for the award, in the form specifically required by Art. 16, § 1(c)(1)(i) and (ii) and second, insufficiency of the evidence to justify the award. He claims that the court's findings were clearly erroneous.[6]

■ Md.Code Ann. Art. 16, § 1(c)(1) governs the award of alimony for an indefinite period. It provides, in pertinent part:

.    .    .    .    .

The court may award alimony for an indefinite period when it finds as a fact that:
(i) The party seeking alimony, by reason of age, illness, infirmity, or disability, cannot reasonably be expected, to make substantial progress toward becoming self-supporting; or
(ii) Even after the receiving party will have made as much progress toward self-support as can reasonably be expected, the respective standards of living of the two parties will be unconscionably disparate.

---

**5.** We note that the court could and should have imposed strict guidelines for the submission of the decree and, in any event, made sure that it was submitted prior to the expiration of the 90th day.

**6.** See Md.Rule 1086.

Because trial judges are presumed to know the law, *Hebb v. State*, 31 Md.App. 493, 356 A.2d 583 (1976), not every step in their thought process needs to be explicitly spelled out. *Bangs v. Bangs*, 59 Md.App. 350, 475 A.2d 1214 (1984).

We set out the trial judge's ruling on alimony in its entirety:

> With regard to alimony the court has gone over the figures carefully, and again, I emphasize the criteria established in awarding the alimony. The court has to take into consideration the financial needs and resources of both the parties including their rights to receive retirement benefits and I have taken into consideration the financial needs of Mrs. Zorich. Mrs. Zorich is presently living in Florida near her mother and father and Mr. Zorich has his financial needs also. Her ... as I indicated, her income is about ten thousand dollars working overtime and his is fifty thousand dollars. He even has an overage of I think it was ninety five dollars according to his figures ... Ninety five dollars per week overage. His net receipts of income, six hundred and five dollars per week, so his net is ninety-five dollars per week overage. On the other hand, Mrs. Zorich does not have sufficient income to take care of her ... of her needs. The ability of the parties seeking alimony to be self supporting ... the evidence indicates that she has about a high school education, while Mr. Zorich is a college graduate, an engineer. Her ability to be self-supporting has been very difficult. She worked ... at the marriage, really most of her life, and raising the children and consequently does not have any real training. The question of time needed by that party to gain an education, or training needed for suitable employment. Well, in this case we're talking about someone who is fifty-two years of age, and who has been ill and who perhaps can gain some kind of an education or perhaps can't again. There is no real solid evidence that she is able to gain much of an education to better herself. The standard of living of the parties during the marriage, as I indicated before, we

were talking about middle class Americans. The duration of this marriage, it's a thirty year marriage, however, there was ten years where we don't have the ideal kind of a marriage. The contributions of each of the parties for the wellbeing of the family, it appears that both [sic] of contributed to the wellbeing. The facts and circumstances leading to the estrangement and dissolution of the marriage, as I have indicated before, the court places the blame, the estrangement, upon the shoulders of Mr. Zorich because of the adultery in this case.

The age, again, fifty-two and fifty-three, fifty-two for Mrs. Zorich and fifty-three for Mr. Zorich. The physical and mental condition of the parties and I have already enumerated those. Any agreement between the parties and we have none. The ability of the party from whom alimony is sought to meet his or her needs while meeting those of the other party ... the question is how much Mr. Zorich is able to pay and the court went over the ... as I say, he even shows an overage of ninety-five dollars per week, but the court concludes that he is living, as I have looked over my notes from Mrs. Samms, and she is contributing something to the household and he is contributing something and it appears that it is very difficult for Mrs. Zorich who has invested her life into this marriage to walk out of here and be able to support herself at least to the station of her life during the marriage. The court concludes that Mr. Zorich should pay unto Mrs. Zorich the sum of $190.00 per week as alimony.

His oral opinion makes patent that the trial judge was fully aware of and applied art. 16, § 1(c)(1) when he made the alimony award. It is also clear that he was aware of and applied the factors set out in art. 16, § 1(b). The only question then is whether his decision was clearly erroneous. We think it was not. Our review of the record reveals ample evidence upon which to sustain indefinite alimony under subsection (c)(1)(ii). *See Holston v. Holston*, 58 Md. App. 308, 473 A.2d 459 (1984). The trial court considered the effect of appellee's alcohol problem on the breakup of

the marriage and, in effect, found it to have been "an incidental contributing factor". *Wallace v. Wallace,* 290 Md. 265, 429 A.2d 232 (1981). Similarly, the judge considered the disparate standards of living of the parties and the likelihood that rehabilitative alimony would mitigate that disparity. We are unable to conclude from the facts that his determination as to each was clearly erroneous.

We perceive no error.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.