523 A.2d 1025

**Robert P. WILLIAMS**

v.

**Cleva G. WILLIAMS**

**No. 991, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 13, 1987.

24

George Z. Petros (Fisher & Walcek, on brief), Marlow Heights, for appellant.

Donald T. Cheatham (Douglas N. Gottran, on brief), Rockville, for appellee.

Argued before GARRITY, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

On this appeal and cross-appeal from judgments of the Circuit Court for Prince George's County, we will hold that Maryland Fam.Law Code Ann. § 8–203 is not jurisdictional, *i.e.* does not deprive the trial court of authority to render a valid judgment. But, because we also hold that the trial judge committed error in the application of the provisions of the Property Disposition and Annulment in Divorce Act, Maryland Fam.Law Code Ann. § 8–201 et seq., we nevertheless will reverse in part the judgment thus entered and remand to the trial court for further proceedings consistent with this opinion.

Robert P. Williams, appellant/cross-appellee, (husband) and Cleva G. Williams, appellee/cross-appellant (wife), were married in September 1965. They finally separated in 1979. Shortly after their separation, pursuant to an agreement entered into prior to the separation, the marital home was sold and the proceeds were divided between the parties.

Subsequently, on November 9, 1984, the wife filed in the Circuit Court for Prince George's County, a complaint for divorce and other relief. The husband responded to the

complaint and filed a cross-complaint for divorce. Following trial on the complaint and cross-complaint in November, 1985, the trial judge granted appellant an absolute divorce on his cross-complaint and reserved the marital property issues for later decision. The order for absolute divorce was signed on November 27, 1985 and filed on November 29.

In compliance with the trial judge's request, made at the conclusion of the trial on November 8, 1985, the parties submitted proposed findings of fact, conclusions of law and judgment to the court. Thereafter, concerned that determination and disposition of the marital property would not be made within 90 days as required by § 8–203, the parties jointly moved to extend the time for making the determination until 30 days after February 25, 1986, the date that they both agreed was the 90th day. A consent order to that effect was signed by the trial judge on February 20, 1986. On June 25, 1986, the trial judge filed his Findings of Fact and Conclusions of Law, in which he determined the marital property and its value. He also considered and denied the wife's request for alimony and ordered: the sale of property owned by the parties in Florida and the division of the proceeds; the entry of judgment in favor of the wife in the amount of $55,000. as a monetary award; and that the husband pay $4,000. as a contribution to the wife's attorney's fees.

The consent order of February 20, 1986 was also filed on June 25, along with three other orders of court, dated, respectively, March 26, 1986, April 30, 1986 and May 29, 1986, extending "the time in which marital property and other issues may be determined." The latter three orders purported to have been passed "upon consideration of the parties' joint request", however, the record does not reflect any such request and the parties deny making such a request.

Both parties were dissatisfied with the court's judgment; thus, both appealed. While the wife's appeal contests only

the denial of alimony, the husband, finding much more to complain about, presents eight questions for resolution:

1. Did the trial judge lose jurisdiction to pass a marital award under Family Law Article § 8–203 when said award was entered 89 days after the expiration of the time to which the parties had given their consent?

2. Was the chancellor clearly erroneous in not valuing or passing any award concerning the appellee's retirement plan?

3. Was the chancellor clearly erroneous in including as marital property certain accounts which, by the evidence, no longer existed, and in failing to properly value those accounts that did exist?

4. Was the chancellor clearly erroneous in failing to designate as non-marital property monies which the appellant had contributed toward the purchase of the parties' former marital home?

5. Was the chancellor clearly erroneous in valuing the appellant's Keough Plan in the same amount as existed in the account at the time of trial, without regard to the tax penalty consequences if the money had to be withdrawn?

6. Was the chancellor clearly erroneous in passing a lump sum judgment without regard to the appellant's ability to pay said judgment or any evidence of his ability to borrow money by which to pay said judgment?

7. Was the chancellor clearly erroneous in not considering appellant's obligations for monies borrowed to build his present home, which money is still owed?

8. Was the chancellor clearly erroneous in awarding attorney's fees given the the state of the evidence regarding that matter?

1

The threshold issue is of course the validity and vitality of the lower court's judgment, which in turn, depends upon

that court's jurisdiction to pass an order effectuating its findings of fact and conclusions of law. Its resolution requires that we once again revisit § 8–203, the successor to Maryland Courts and Jud. Proceedings Code Ann. § 3–6A–05(a), which has been considered and construed by the Court of Appeals, *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982), and by this Court on three occasions: *Russell v. Russell,* 50 Md.App. 185, 436 A.2d 524 (1981); *Zorich v. Zorich,* 63 Md.App. 710, 493 A.2d 1096 (1985); *Ticer v. Ticer,* 63 Md.App. 729, 493 A.2d 1105 (1985).

When *Russell* was decided, § 3–6A–05(a) provided:

In granting an absolute divorce or annulment, or at anytime within 90 days thereafter, if in its decree granting the divorce of annulment, the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is at issue.

In *Russell,* the court reserved in its divorce decree the issue of monetary award; however, the parties agreed to extend the time for making the determination to beyond the 90 day period. The court's decree designating marital property was filed after the agreed period had expired. We held that the court lost jurisdiction to make the determination and that the determination made was a nullity since "the parties could not confer jurisdiction by consent where the jurisdiction did not exist...." 50 Md.App. at 187, 436 A.2d 524.

This same section was before the Court of Appeals in *Brodak.* There, the decree designating marital property was filed on the 91st day after the divorce decree was filed. The husband, relying on *Russell,* argued that the court lost jurisdiction to make a monetary award. The *Brodak* Court rejected the *Russell* interpretation, specifically stating "We disagree with the concept that because of the delay 'the court lost jurisdiction and [for that reason] any determination[s] thereafter concerning the appellee's pension rights were nugatory." 294 Md. at 14, 447 A.2d 847. Instead, the Court, citing *Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980) and *Pulley v. State,* 287 Md. 406, 412 A.2d 1244

(1980), held that the circuit court was not deprived of subject matter jurisdiction to make a marital award because,

> There is nothing in the statute here to indicate an intent on the part of the General Assembly to strip the court of its jurisdiction relative to marital property after the lapse of ninety days from the date the decree was entered. The statute does not state that if a court, under the circumstances here, grants an absolute divorce it shall have jurisdiction only for a period of ninety days. Rather, it says that in granting a divorce "or at anytime within 90 days thereafter [under certain circumstances] the court shall determine which property is marital property...."

294 Md. at 16, 447 A.2d 847. Significantly, in support of its position, the Court discussed cases in which it had held that failure of a court to render a decision within the time specified in the Maryland Constitution did not deprive the court of jurisdiction. *See e.g. McCall's Ferry Co. v. Price,* 108 Md. 96, 69 A. 832 (1908); *Snyder v. Cearfoss,* 186 Md. 360, 46 A.2d 607 (1946). Although not the critical issue in the case, 294 Md. at 17, 447 A.2d 847 the Court concluded that § 3-6A-05(a) was mandatory and, for that reason, *Russell* "was correctly decided because the parties there were at fault." 294 Md. at 24, 447 A.2d 847. The Court ended its discussion of the 90 day period by making the point that:

> When a statute of limitations specifies that a proceeding must be brought within a certain period of time, it is the failure of the party initiating the proceeding to act in that time frame which bars the action. When a rule or statute says that an appeal must be filed within a stated period of time and the appeal is dismissed for failure to comply, it is the party entering the appeal who is guilty of delay. The position that the husband would have us take would be to impose a sanction on the parties for the failure of the arbiter of the controversy, in this instance the circuit court, to act within the period prescribed by statute.

Since it is the husband, not the wife, who is dissatisfied with the chancellor's award, the practical effect were we to adopt the husband's position would be to place the sanction for the chancellor's failure to act within the specified time upon the prevailing party, the wife. We think that result would be wrong. Absent a mandate from the General Assembly similar to that in *Scherr* [*v. Braun* ], 211 Md. 553 [128 A.2d 388 (1957) ], in light of the peculiar facts and circumstances there present, we decline to impose such a sanction here.[1]

In *Zorich*, the trial court's decree granting the wife a divorce reserved, for the statutory period, issues related to marital property, alimony and counsel fees. Following a hearing, held within the statutory period, the trial judge orally announced his findings of fact and resolved the marital property and related issues. The supplemental decree embodying the oral opinion was not filed, however, until 22 days after expiration of the 90 day period. The delay, was the result of disagreement between counsel, which arose prior to the expiration of the period, concerning the provisions of the supplemental decree as drafted, at the court's request, by the wife's counsel. In response to Russell, § 3–6A–05(a) [2] was amended by Acts 1982 Ch. 294 so as to permit the court, with the consent of the parties and within the time reserved, to extend the time for deter-

---

1. The statute in *Scherr* contained "... specific consequences of a failure to act, and an implication in the literal language that is a negation of the right to act after the time specified." 211 Md. at 562, 128 A.2d 388.

2. Section 3–6A–05(a), as amended, provided:
   In granting an absolute divorce or annulment, or at anytime within 90 days thereafter, if in its decree granting a divorce or annulment the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue. If the court has reserved the power to make the determination, the court may within the time reserved further extend the time for making the determination with the consent of the parties.

mining marital property. The parties had not consented to an extension.

Relying on *Brodak,* this Court held that "It is neither the lapse of time, nor the mandatory nature of § 3–6A–05(a)(1) which is controlling; rather it is the responsibility for the delay." 63 Md.App. at 715–16, 493 A.2d 1096. Concluding that the trial judge's responsibility for filing the decree designating marital property could not be shifted to a party by the direction to draft or prepare the decree, we refused to place the burden of the court's failure to act within the prescribed time on the prevailing party.

The power of the court to pass an order designating marital property and resolving marital property issues after the expiration of the statutory period, or any extension thereof, was once again before this Court in *Ticer.* There, the court's decree of divorce retained jurisdiction to determine the marital property of the parties for the statutory period. No determination was made by the court, and none was requested by the parties during the period. Approximately 30 days after the period expired, however, the wife requested that the matter be set for a hearing pursuant to the court's reservation. More than two years later, the parties consented in open court to the referral of the issue of "division of personal property" under the Marital Property Act to an auditor, who subsequently recommended that the wife's claim against the husband's pension benefits be denied. The recommendation flowed from the auditor's conclusion that "since the parties [had] failed to designate [the pension] as part of the [marital property]" within the statutory period, the court lost jurisdiction. 63 Md.App. at 731, 493 A.2d 1105.

As a threshold matter, this Court resolved the issue whether § 8–203,[3] a recodification of § 3–6A–05(a), which

---

3. Section 8–203 provides:

(a) Time of court action.—In a proceeding for annulment or an absolute divorce, if there is a dispute as to whether certain

became effective October 1, 1984, or § 3–6A–05(a) controlled the resolution of the dispute. We concluded that on the facts of that case, the result was the same under either version. We reiterated that *"Brodak* established a test of fault", 63 Md.App. at 734, 493 A.2d 1105, and that "where no determination is made within 90 days and the fault does not lie solely with the arbiter, imposition of the sanction that prohibits the court from acting is proper." 63 Md.App. at 735–36, 493 A.2d 1105. We noted that the wife did not even move for a hearing until after the 90th day from the granting of the divorce.

■ Despite the clarity of *Brodak's* holding and the husband's apparent recognition of that holding, the thrust of the husband's argument nevertheless is that the trial court lost jurisdiction when it did not designate marital property within the statutory period, as extended by the consent of the parties. He even suggests that the viability of the Brodak "fault" test is questionable "after the *Ticer* case ... and more importantly, after the action of the Maryland legislature in passing as emergency legislation its new language for 3–6A–05, now codified in 8–203." Moreover, the husband asserts that, assuming the continued viability of the fault test, jurisdiction is still lost because:

it was incumbent upon the parties to request an additional extension, or one of the parties to request an additional extension of time and garner the other party's consent to

property is marital property, the court shall determine which property is marital property:

(2) within 90 days after the court grants an annulment or divorce, if the court expressly reserves in the annulment or divorce decree the power to make the determination; or

(3) after the 90 day period if:

(i) the court expressly reserves in the annulment or divorce decree the power to make the determination;

(ii) during the 90 day period, the court extends the time for making the determination; and

(iii) the parties consent to the extension.

that extension. Since this was not done, neither of the parties can now say they are without fault.... 

We find merit in none of these contentions. First, we note that the fault test of *Brodak* remains viable. *Ticer* specifically recognizes that this is so. But even if it had not, *Ticer* could not overrule *Brodak*. Nor does the 1982 amendment of § 3–6A–05(a) provide succor for the husband's position. The amendment was passed in response to *Russell's* jurisdiction concept, a fact recognized in *Brodak*. 294 Md. at 14, n. 1, 447 A.2d 847. The intent of the amendment was to provide a mechanism whereby the court's jurisdiction would not be lost if it did not act within the statutory period. The amendment did not substantively change the basic time provision. It follows that if the statute was not jurisdictional before the amendment, *see Brodak*, 294 Md. at 16, 447 A.2d 847, it was not jurisdictional after the amendment.

At all times during the proceedings, the trial court had the power to act with respect to the parties and the subject matter. The expiration of the statutory period, as extended by consent of the parties, did not deprive the court of that power.

In this case, as in *Brodak* and *Zorich*, all of the evidence necessary for the court to designate marital property had been provided to the court within the 90 day period. It was only the court's order that was entered after the 90th day. In *Ticer*, on the other hand, the evidence necessary to permit the court timely to make the designation of marital property was not provided the court until after the expiration of the statutory period. Since all three cases recognize that failure to act within the statutory period did not affect the jurisdiction of the court, it is patent that the procedural posture of each case dictated the result. Thus, we glean from the cases that the trial judge ordinarily is at fault when, having been provided with all of the evidence necessary timely to determine marital property, he or she delays in doing so until after the statutory period has passed; the parties are ordinarily at fault when they fail to provide the

necessary information within the statutory period. This explains why the allocation of fault in *Ticer* was different than it was in *Brodak* and *Zorich.*

■ The case *sub judice* is more akin to *Brodak* and *Zorich* than to *Ticer.* Prior to the beginning of the statutory period and continuing until the trial judge had filed his Findings of Facts and Conclusions of Law, the parties had presented to the trial judge all of the evidence necessary to permit him to designate marital property and to make disposition with respect thereto, including determining if alimony should be awarded. Beyond consenting to an extension of time, and urging the court to make a decision, the parties here had no further role to play in the designation of marital property or in the decision pertaining to its disposition. Therefore, as in *Brodak* and *Zorich,* the fault was that of the trial judge and not that of the parties or either of them.

### 2, 3, 5

■ "Marital property means property, however titled, acquired by one or both parties during the marriage." Maryland Fam.Law Code Ann. § 8–201(e); *Campolattaro v. Campolattaro,* 66 Md.App. 68, 81, 502 A.2d 1068 (1986). Property acquired by a party up to the date of the divorce, even though the parties are separated, is marital property. *Campolattaro, supra; Wilen v. Wilen,* 61 Md.App. 337, 345, 486 A.2d 775 (1985); *Cotter v. Cotter,* 58 Md.App. 529, 537, 473 A.2d 970 (1984); *Dobbyn v. Dobbyn,* 57 Md.App. 662, 675, 471 A.2d 1068 (1984). But, as we pointed out in *Gravenstine v. Gravenstine,* 58 Md.App. 158, 472 A.2d 1001 (1984):

"... [M]arital property which generates a monetary award must ordinarily exist as "marital property" as of the date of the final decree of divorce based on evidence adduced at the trial on the merits or a continuation thereof. Therefore, property disposed of before commencement of the trial under most circumstances cannot be marital property."

58 Md.App. at 177, 472 A.2d 1001. Included in the list of marital property titled in the husband's name are six bank accounts aggregating $83,500:

| | |
|---|---:|
| John Hanson Savings & Loan | – $ 4500. |
| Suburban Bank | – $ 4000. |
| Annapolis Federal | – $20,000. |
| IRA–Suburban Bank | – $ 6,000. |
| John Hanson Savings & Loan | – $14,000. |
| Annapolis Federal | – $35,000. |

The husband contests the valuation of four of them: the two Annapolis Federal accounts, aggregating $55,000; the John Hanson Savings & Loan account in the amount of $14,000. and the Suburban Bank checking account in the amount of $4,000. Referring to the Annapolis Federal accounts, he proffers that the value attributed to each account is the highest balance in the account during its existence. The husband contends that the John Hanson account is duplicative of the $4500. account and that the trial judge overstated the value of the Suburban Bank account by $2,000.

The record supports the contention that the Annapolis Federal accounts had been closed and, therefore, did not exist on the date of the divorce. The exhibits produced by both parties reflect that this is so. In fact, they reveal that those accounts were closed at least two years before the divorce proceedings. Consequently, the accounts are not marital property in the consideration of which a monetary award may be based. *Gravenstein,* 58 Md.App. at 178, 472 A.2d 1001.

The marital award must be vacated.

On remand the court must again determine and value all marital property and reconsider, in light of that redetermination and revaluation, whether a monetary award should be made.

The husband also complains about the court's valuation of the wife's pension as well as his pension. Concerning the former, he contends that the trial judge erred by valuing it

at zero when the evidence showed that it would provide the wife with $427.62 per month at age 55 approximately five years from the date of divorce, and $527.62 at age 62. He points out that the court had before it evidence of the wife's age, the place and length of her employment, the date of her marriage, and the date of her termination from employment—all the facts necessary for valuation of the pension.

Although the proponent of the valuation of marital property bears the burden of producing evidence as to its value, it is the chancellor who must determine the value of marital property. § 8–205(a); *Nisos v. Nisos,* 60 Md.App. 368, 383, 483 A.2d 97 (1984); *Cotter,* 58 Md.App. at 537, 473 A.2d 970. In that regard, valuation is not an exact science. *Brodak,* 294 Md. at 27, 447 A.2d 847. Consequently, the chancellor is not bound to accept the values proposed by the parties; nor need he or she profess to be more ignorant than the rest of mankind. *Hettleman v. Frank,* 136 Md. 351, 363, 110 A. 715 (1920).

Whether the chancellor's valuation of the wife's pension is clearly erroneous depends upon the facts and circumstances of the case. *Deering v. Deering,* 292 Md. 115, 131, 437 A.2d 883 (1981); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 509, 497 A.2d 485 (1985). Where the evidence before the court, though meager, demonstrates that the property has value, a valuation of zero is clearly erroneous. This is true even though no actuarial data has been provided by either party. On remand, the trial court must reconsider the value of the wife's pension.[4]

The husband's assertion that the trial judge was clearly erroneous in valuing his Keogh Plan without regard to the tax consequences is belied by the very case which he cites for support. *Rosenberg* makes clear that the potential tax consequences of a disposition of property "should not be

---

**4.** For a discussion of the methods of valuating pensions, *see Deering,* 292 Md. at 129–33, 437 A.2d 883; Harmon v. Harmon, 61 Md.App. 554, 567, 571, 487 A.2d 554 (1985).

taken into account in valuing the property before making a monetary award." 64 Md.App. at 526, 497 A.2d 485. Rather, such consequences should be considered as an "other factor" pursuant to § 8–205,[5] which concerns the determination of the amount and method of payment of a monetary award. It follows that the trial judge was not clearly erroneous in his valuation of the Keogh Plan. Since we are vacating the monetary award, assuming that evidence of tax consequences is presented on remand, the trial judge must, consider those consequences in the event that he determines to make a monetary award. We do point out, however, that such evidence must not be speculative. *Rosenberg,* 64 Md.App. at 526, 497 A.2d 485.

■■■■ An award of alimony must take into account the amount of any monetary award made and, conversely, a monetary award must be made in light of any alimony awarded. Alimony and a monetary award are thus significantly interrelated and largely inseparable. The decision to award one or both must be made after a consideration of each in their mutual context. *Campolattero,* 66 Md.App. at 75, 502 A.2d 1068; *Cotter,* 58 Md.App. at 535, 473 A.2d 970; *Quigley v. Quigley,* 54 Md.App. 45, 53, 456 A.2d 1305 (1983). Consequently, whether to award alimony, be it rehabilitative or permanent, must be decided in light of all the factors in the case, including any monetary award made. *Cotter, supra.* Therefore, the trial judge on remand, must also reconsider the wife's claim for alimony in context with his reconsideration of the monetary award. Such reconsideration should take account of *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459 (1984), *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984).

4

■■■■ The husband contends that the trial judge was clearly erroneous in failing to designate as non-marital property

---

**5.** The trial court is permitted to consider "any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." § 8–205(a)(10).

monies which he contributed toward the purchase of the parties' former marital home. That home was sold, upon the agreement of the parties, several years prior to the initiation of these divorce proceedings. At that time, the parties, presumably, also pursuant to agreement, divided the proceeds of the sale. We perceive no abuse of discretion on the part of the trial judge in not considering those monies.

### 6

Appellant next alleges that the trial judge should not have made a monetary award without considering his ability to pay that award. Ordinarily, of course, the trial judge should consider the amount of the monetary award and the method of its payment in light of the payor's ability to pay or to borrow and repay. *Rosenberg*, 64 Md.App. at 523, 497 A.2d 485. In light of our disposition of the monetary award issue, we need only comment that the husband will have the opportunity on remand to demonstrate that he does not have the ability to pay or to borrow and repay. It is obvious, however, that, in the absence of specific and probative evidence to the contrary, the trial judge may infer the ability to pay from the financial evidence adduced on the other issues in the case. *See Rosenberg*, 64 Md.App. at 522, 497 A.2d 485.

### 7

The husband's contention that the trial judge was clearly erroneous in failing to consider his obligations in connection with his present home is totally without merit. There was conflicting evidence as to the nature and amount of those obligations. The trial judge's valuation of the home represents his resolution of those conflicts. That resolution is not clearly erroneous. Md. Rule 1086.

### 8

The final issue presented by the husband relates to the award of counsel fees to the wife. We recognized in

*Holston,* that the trial court's disposition on remand for reconsideration of a monetary award may affect the financial statuses of the parties. 58 Md.App. at 327, 473 A.2d 459. *See also Randolph v. Randolph,* 67 Md.App. 577, 589, 508 A.2d 996 (1986). This is particularly the case when, as here, the remand is for reconsideration of the denial of alimony, as well. Thus, we vacate the attorney's fee award and remand for reconsideration of that award in light of any changes in the financial statuses of the parties which might result from the reconsiderations ordered herein. *Randolph,* 67 Md.App. at 589–90, 508 A.2d 996.[6]

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

---

**6.** There is no dispute regarding the judgment of divorce; hence it is affirmed.