748 A.2d 1031

**Rodney Soloman WARE, Sr.**

v.

**Sandra Moore WARE.**

**No. 6200, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

March 30, 2000.

208

Paul Bauer Eason, Greenbelt, for appellant.

Peter R. Kolker (Kristen M. Flynn and Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., on the brief), Washington, DC, for appellee.

Argued before MOYLAN, KENNEY and ADKINS, JJ.

MOYLAN, Judge.

The appellant, Ronnie Soloman Ware, Sr., challenges the Orders issued by Judge Theresa A. Nolan in the Circuit for Prince George's County awarding the appellee, Sandra Moore Ware, 1) a monetary award in the amount of $1,602,588.20, 2) indefinite alimony, 3) child support, and 4) attorney's fees. On appeal, the appellant contends:

1. that the trial court erred in granting the appellee a monetary award which included a portion of the appellant's lottery winnings acquired after the parties were separated;

2. that the trial court erred in granting the appellee an award of indefinite alimony based on disparity of income;

3. that the trial court erred in awarding the appellee child support when the appellee's financial statements indicated that she had excess income on a monthly basis and the minor child had no unmet needs; and

4. that the trial court abused its discretion in requiring the appellant to pay § 14,000 towards the appellee's attorney's fees.

On cross-appeal, the appellee contends:

that the trial court erred in limiting its award of attorney's fees to only $14,000.

## Facts and Procedural Background

This case involves a dispute between the parties, formerly husband and wife, over the $17 million Powerball winnings won by the appellant shortly after the parties separated in December 1995. The parties were married in August 1992, and have one minor child, Rodney Soloman Ware, Jr., born on December 8, 1993.

While the parties were living together, their monetary contributions to the marriage were substantially equal. Al-

though the appellee was unemployed for short periods of time on at least three occasions during the marriage, she had primary responsibility for caring for the child and for keeping up the home. When both were working, the parties shared those responsibilities. When both were employed, each party earned approximately $25,000 per year.

The marriage between the parties was short-lived. In December of 1995, after only three-and-a-half years of marriage, the parties separated and the appellee moved into her own apartment. According to the appellee, the marriage broke up as a result of financial strain caused by the appellant's gambling. The appellee also alleged that on at least three occasions there had been physical altercations between her and the appellant. It was also revealed, however, that the appellee had committed adultery in April of 1995. The appellant was unaware of his wife's infidelity until September 1997.[1]

Notwithstanding the separation, from December 1995 until April 1996, the appellant would often visit the plaintiff in her new apartment and stay overnight. The parties continued to have sexual relations during that period of time. In April of 1996, four months after the parties separated, the appellant won the D.C. Powerball lottery, winning an annuity of $17 million. The appellant received his first initial payment in the first week of May 1996 in the amount $856,853.08, and was to receive $846,000 per year, before taxes, for the following nineteen years.

On August 13, 1996, the appellee filed a Complaint for Absolute Divorce in the Circuit Court for Prince George's County. The appellant initially responded by filing a Counter–Complaint for a Limited Divorce. In October of 1997, the appellant filed an Amended Supplemental Counter–Complaint for Absolute Divorce after learning of the appellee's adultery for the first time during a deposition held on September 24,

---

1. The appellant also committed an act of adultery, approximately nine months after the parties separated. The trial court considered this conduct by both the appellant and the appellee when rendering its decisions in this case.

1997. The parties also entered into a Parenting Agreement which resolved the issues of child custody and visitation.

On December 1, 1997, a hearing was held before Judge Nolan with respect to the appellee's Complaint for Absolute Divorce and the appellant's Amended Supplemental Complaint for Absolute Divorce. By consent of all parties, the appellee's requests for child support and attorney's fees were severed from the trial and were to be resolved following a ruling from the trial court on the parties' respective Complaints for divorce and the appellee's requests for a monetary award and indefinite alimony.

On April 8, 1998, the trial court issued a written Opinion and Order granting the appellant an absolute divorce from the appellee on the grounds of adultery. The trial court then awarded the appellee a monetary award totaling $1,602,588.20. The trial court also ordered the appellant to pay the appellee, as indefinite alimony, $3,500 per month commencing on April 1, 1998.

On April 20, 1998, the appellant filed a timely Motion to Alter or Amend the Judgment, seeking 1) reconsideration of the trial court's award of indefinite alimony and 2) clarification as to who should bear the tax consequences of the monetary award. On November 2, 1998, a hearing was held on the appellant's motion, which was ultimately denied on November 25, 1998.

On December 14, 1998, a hearing was held regarding the issue of child support, during which testimony was presented by both parties. On February 4, 1999, after considering the evidence presented at that hearing and reviewing the memoranda of law submitted by the parties, the trial court issued an Order requiring the appellant to pay $1,500 per month for child support. The trial court further ordered that the appellant contribute $14,000 towards the appellee's attorney's fees. Both parties filed motions to modify that Order. On May 3, 1999 the trial court issued a Memorandum of Court denying all outstanding motions. The parties then noted timely appeals.

## The Monetary Award

■ The appellant's sole contention with regard to the monetary award is that the trial court erred in awarding the appellee any portion of his lottery winnings. Although conceding that the "annuity is technically marital property because it was acquired during the course of the marriage and prior to the granting of the Judgment of Absolute Divorce," the appellant, relying on *Alston v. Alston,* 331 Md. 496, 509, 629 A.2d 70 (1993), nonetheless contends that the record in this case "contains no evidence which would justify awarding any portion of the annuity to the wife."

As explained by this Court in *Strauss v. Strauss,* 101 Md.App. 490, 501, 647 A.2d 818 (1994):

> Maryland law requires the application of a three-step analysis when calculating a monetary award in the course of a divorce proceeding: (1) the trial court must initially characterize all property owned by the parties, however titled, as either marital or non-marital; (2) the court shall then determine the value of all marital property; and, finally, (3) the court may then make a monetary award as an adjustment of the parties' equities and rights in the marital property.

(Citations omitted). *See also Doser v. Doser,* 106 Md.App. 329, 349–50, 664 A.2d 453 (1995). It is undisputed that in this case, Judge Nolan 1) properly characterized the Powerball winnings as marital property and 2) properly determined the value of that marital property.

In then balancing the equities as part of the third step, a court is called upon to consider the following factors set forth in Md.Code, § 8–205(b) of the Family Law Article:

> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> (2) the value of all property interests of each party;
>
> (3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) the contribution by either party of the property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;

(10) any award of alimony and any award or other provision that the court has made with respect to family use and personal property or the family home; and

(11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

After proper consideration of those factors, the ultimate decision of whether to grant a monetary award and the amount of such an award are matters entrusted to the sound discretion of the trial court. *See Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70 (1993); *Lemley v. Lemley,* 102 Md.App. 266, 298, 649 A.2d 1119 (1994).

## The Appellant's Reliance on *Alston*

In support of his contention that the appellee is not entitled to any portion of his lottery winnings, the appellant relies solely on the Court of Appeals opinion in *Alston.* He specifically argues that because the facts in this case are "indistinguishable" from those in *Alston,* had the trial court given proper weight to the eighth factor in § 8–205(b) the trial court would necessarily have concluded, as did the Court in *Alston,*

that the appellee was not entitled to any portion of his lottery winnings.

Our response to the appellant's reliance on *Alston* is two-fold. In our judgment, the facts in this case are not "indistinguishable" from those in *Alston*. There are a number of significant distinctions, both factual and procedural, between this case and *Alston*. We will turn to a consideration of those distinctions in a moment.

## What Is The Holding of *Alston?*

More fundamentally, however, there is a chasm of disagreement between this Court and the appellant as to what is the actual holding of *Alston*. At one point, to be sure, the *Alston* opinion wavers and thereby leaves itself vulnerable to two very different arguable interpretations. One could distill from that opinion, as this Court does, a more modest holding as to the guidelines a trial judge should follow in exercising discretion. One could also, however, arguably distill from that same opinion, as the appellant does, a more sweeping holding that would virtually reduce itself to a rule of law that gambling winnings accrued by one party after a separation should never be made the subject of a monetary award.

In deciding how to apply *Alston* to the case before us, we touch the raw central nerve of *stare decisis* itself. In play is the most rudimentary procedure in all of Anglo–American common law, that of how to read a judicial opinion and how to extract therefrom the proper rule of judge-made law. We begin, as any first-year law school student in legal method is taught to begin, with the axiomatic principle that the reader of an appellate opinion must punctiliously avoid being led astray by occasionally broad language and must, instead, carefully extract from the opinion the narrowest reasonable holding that can explain the actual decision made by the court in a particular case.

In *Alston*, a husband purchased a winning lotto ticket with an annuity value of over one million dollars a year-and-a-half after he and his wife had separated, but before they were

divorced. The wife had initially filed, prior to the husband's winning of the lottery, a divorce action based on the couple's voluntary separation for over one year and did not seek either alimony or a monetary award. That action was pending in the Circuit Court for Baltimore City when the wife first learned that her husband had won the lottery. After learning of her husband's sudden stroke of fortune, the wife immediately dismissed that initial divorce petition. Approximately six months later, the wife filed a second complaint for absolute divorce, this time in the Circuit Court for Baltimore County, on the ground of adultery. She sought a monetary award representing a substantial part of her husband's lottery annuity.

After granting the wife an absolute divorce based on the husband's adultery, the trial court granted the wife a monetary award of fifty percent of the yearly net distribution on the annuity. In *Alston v. Alston*, 85 Md.App. 176, 582 A.2d 574 (1990), this Court affirmed the trial court, holding that it had not abused its discretion in making the monetary award. The Court of Appeals reversed our decision, holding that the trial court erred.

The literal issue before the Court of Appeals was whether the trial judge had abused his discretion in making a monetary award to the separated wife of one-half of the lottery winnings won by her husband after the separation. The literal holding of the Court of Appeals on that issue was that **"THE TRIAL JUDGE ERRED IN AWARDING HALF OF THE LOTTO ANNUITY TO MRS. ALSTON."** 331 Md. at 509, 629 A.2d 70.

Immediately after announcing that holding, however, the Court went on to make the following observation:

> Moreover, the record before us contains no evidence which would justify awarding any portion of the annuity to Mrs. Alston.

It is that further observation from which the appellant draws sustenance in this case.

Did the Court in *Alston* hold that it was an abuse of discretion for the trial judge to "award half of the Lotto annuity" to the wife? Or did the Court hold that under facts indistinguishable from those in *Alston,* the Court was actually bereft of discretion to make any award to the wife? It is that latter reading which the appellant would have us give to the *Alston* opinion.

The language in question, to be sure, is broad. It must, however, yield to an overriding question: If, hypothetically, the trial judge in *Alston* had given weighty and careful consideration to the eighth factor (a subject to be more fully discussed) and had the trial judge in *Alston* then meticulously fashioned a monetary award that gave 90% of the Lotto annuity to the husband and 10% to the separated wife, would the Court of Appeals have held that that hypothetical decision was also an abuse of discretion? The answer, of course, is that no one knows because that issue was never before the Court. The interpretation urged on us by the appellant, therefore, cannot constitute the holding of the case for it unnecessarily settles a question that was not the subject for decision.

A sweeping holding such as that urged by the appellant, moreover, would render meaningless the 98% of the *Alston* opinion that preceded it. The Court did not announce a rule of law that after-acquired gambling winnings are not marital property or are not subject to a monetary award. The Court in *Alston* carefully pointed out that the trial judge must weigh numerous relevant factors and then exercise "sound discretion." Even given facts such as those in *Alston,* the Court of Appeals listed and explained the criteria that should guide the exercise of discretion. It emphasized the special weight that should be given to the eighth factor. It analyzed cases from around the country, 331 Md. at 508–09, 629 A.2d 70, and stressed that in Maryland, unlike in many other states, "equitable" distribution is not necessarily "equal" distribution:

> In making a marital property monetary award, *a trial judge must weigh the relevant factors* in light of the legislative purpose, *and then use his or her sound discretion to*

*arrive at an award that is equitable* and in accordance with the statute. Of course, equal distribution may often be proper, and where that result is equitable and consistent with the legislative purpose, a court should not hesitate to make such an award. *Each divorce situation is different, and must be evaluated individually.* In light of the peculiar circumstances of this case, however, the trial judge erred in awarding half of the Lotto annuity to Mrs. Alston.

331 Md. at 509, 629 A.2d 70 (emphasis supplied).

The more moderate holding that we extract from the *Alston* opinion is that the trial judge, albeit possessing discretion even under the *Alston* facts, abused his discretion in two separate regards. He failed to give proper weight, in a situation such as this involving after-acquired gambling winnings, to the so-called eighth factor. He also mechanistically failed to distinguish an "equitable" distribution from an "equal" distribution.

In balancing the equities in the making of a monetary award, § 8–205(b) of the Family Law Article sets out eleven factors that a trial judge should consider. The eighth factor directs the trial judge to consider "how and when specific marital property ... was acquired, including the effort expended by each party in accumulating the marital property." In a case such as this, involving gambling winnings that came to the husband after the parties had separated, the Court of Appeals stressed that this eighth factor "should be given greater weight than the others" and faulted both the trial court and this Court for having failed in the *Alston* case to give that factor the weight it deserved:

> The statutory factors listed in § 8–205(b) are not prioritized in any way, nor has the General Assembly mandated any particular weighing or balancing of the factors. The application and weighing of the factors is left to the discretion of the trial court. Nevertheless, ... *the eighth factor, relating to "how and when specific marital property" was acquired and the contribution that each party made toward its acquisition, should be given considerable weight.* The

*circuit court and the Court of Special Appeals indicated that the eighth factor should not be given any more weight than any other factor in this case. Under the particular circumstances here, however, such approach was not consistent with the statute.*

*... [G]enerally in a case such as this the eighth factor should be given greater weight than the others.*

331 Md. at 507, 629 A.2d 70 (emphasis supplied).

In *Skrabak v. Skrabak*, 108 Md.App. 633, 656, 673 A.2d 732 (1996), we gave a similarly moderate reading to the opinion in *Alston:*

*Alston* does not state that property acquired after separation should be taken out of the marital property pool, only that the timing of acquisition must be considered. The trial judge did that in this case.

In concluding that the trial judge had abused his discretion, the Court of Appeals in *Alston* also strongly suggested that the trial judge may have failed to recognize the difference between an equitable division of marital property and an equal division and "may have succumbed to the temptation to divide the property equally":

In this case, ... once property was determined to be "marital," *the circuit court may have succumbed to the temptation to divide the property equally.* As previously discussed, *our statute requires "equitable" division of marital property, not "equal" division.* The Maryland Legislature specifically rejected the notion that marital property should presumptively be divided equally. In Maryland, as in the majority of equitable distribution states, *"equitable" does not necessarily mean "equal."*

331 Md. at 508, 629 A.2d 70 (footnote omitted; emphasis supplied).

In *Skrabak v. Skrabak*, this Court concluded that the trial judge did not abuse his discretion in making a monetary award of after-acquired property. He gave due weight to the eighth factor, as enjoined by *Alston,* and resisted succumbing to the temptation of treating an equitable division necessarily as an equal division, as also enjoined by *Alston.* Under the

circumstances, his division of "after-acquired property" was not an abuse of discretion:

> Dr. and Mrs. Skrabak had $987,825 of marital property. Mrs. Skrabak's monetary award of $292,000 is not grossly disproportionate, *it is not an equal division of the after-acquired property, and it does not indicate that the trial judge did not give considerable weight to FL § 8–205(b)(8).*

108 Md.App. at 656, 673 A.2d 732 (footnotes omitted; emphasis supplied).

Indeed, in the *Alston* opinion itself, 331 Md. at 500, 629 A.2d 70, the Court of Appeals clearly stated what it had decided:

> We shall conclude in this case that *the trial court erred when it awarded to the wife half of the value* of a specific piece of marital property.

(Emphasis supplied).

■ Applying the *Alston* holding as we distill it from the *Alston* opinion, we now turn our attention to whether the trial judge 1) thoughtfully considered all of the factors, especially the eighth factor; and 2) carefully fashioned an equitable, albeit not an equal, division of the after-acquired marital property.

### Factual Distinctions

There are a number of factual distinctions between this case and *Alston*. In *Alston*, the parties had been separated for over a year-and-a-half when the winning lottery ticket was purchased. In this case, the parties had been separated for only four months when the winning ticket was purchased. In *Alston*, the wife had already filed for divorce long before the winning ticket was purchased. In this case, neither party had taken any formal steps toward filing for divorce. In this case, unlike the situation in *Alston*, the parties continued to have sexual relations on a regular basis throughout the four-month period of separation. In this case, the appellant was a frequent overnight visitor at his wife's new apartment.

In this case, the parties had a three-year-old son who was a continuous source of contact between them. In *Alston*, the children had long since been emancipated. In this case, unlike

*Alston,* the appellee loaned her car to the appellant, drove him to work, and loaned him money, all subsequent to the separation. In this case, moreover, both parties testified to having sexual relations between them as late as two months after the winning Powerball ticket had been purchased. This was not a case, as was *Alston,* where it could fairly be said that "the marital family has, as a practical matter, ceased to exist." 331 Md. at 507, 629 A.2d 70.

In her Opinion and Order, Judge Nolan noted a number of these factual distinctions between the present case and *Alston:*

> The Court will award to the plaintiff a monetary award in consideration of the above-referenced factors. The Court makes its award in light of the fact that the defendant won the Powerball after the parties had separated and were living in separate residences. *The Court, however, also makes its award in light of the fact that the parties continued to have sexual relations during this period of separation.* Furthermore, the Court makes its award considering the letter written by the plaintiff to the defendant prior to the winning of the Powerball, in which the plaintiff expressed that the marriage was over.

> *The Court believes that the facts in this case are somewhat distinguishable from the facts in the Alston case. Here, the parties were separated only four months but continued to have sexual relations before the defendant won the Powerball. In Alston, the parties were separated for at least a year and a half, during which time Mrs. Alston filed her first divorce complaint, before Mr. Alston won the lottery.* However, in making its monetary award, the Court focuses on the eighth factor—how and when the specific marital property was acquired, including the effort expended by each party.

(Emphasis supplied).

### Procedural Distinction No. 1:
### The Thoughtful Weighing of the Eighth Factor

In *Alston,* 331 Md. at 507, 629 A.2d 70, the Court of Appeals explained why "in a case such as this the eighth factor should

be given greater weight than the others" and faulted both the trial court and this Court for having "indicated that the eighth factor should not be given any more weight than any other factor." Heedful of *Alston,* Judge Nolan acknowledged that the eighth factor "should be given considerable weight." In a 23–page Opinion and Order, she made a detailed analysis of all of the factors listed in § 8–205(b). She then engaged specifically in a detailed discussion of the eighth factor:

8. **How and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan or both.**

The defendant contends that this factor should be given considerable weight. The court in *Alston* stated that:

... generally in a case such as this the eight factor should be given greater weight than the others. Where one party, wholly through his or her own efforts, and without any **direct or indirect contribution** by the other, acquires a specific item of marital property after the parties have separated and after the marital family has, as a practical matter, ceased to exist, a monetary award representing an **equal division** of that particular property would not ordinarily be consonant with the history and purpose of the statute. (Emphasis added).

*Alston,* 331 Md. at 507, 629 A.2d 70.

As in *Alston,* the defendant in this case took the time and effort to purchase the lottery ticket. While the cost was little and the effort minimal, the annuity was acquired entirely through the defendant's efforts.

The plaintiff argued that even though she did not play a direct part in purchasing the lottery ticket, she made indirect contributions to the purchase of the winning lottery ticket. The plaintiff relies on *Alston* as her basis for this theory. The plaintiff argues that because of the defendant's

excessive spending on lottery tickets and sporting bets, she was forced to subsidize the defendant's lower contributions to the support of the parties' child.

The plaintiff further argues that if the parties had considered the child support guidelines during the period of time when the defendant was playing the lottery, his contribution would have been below the guidelines amount. Thus, the plaintiff argues that she indirectly contributed to the specific item of marital property—the lottery winnings.

The Court finds that both parties spent approximately equal amounts of money on recreation activities, whether it was on purchasing lottery tickets, going shopping, or spending time with friends at various different locations. The Court does not find that the plaintiff indirectly contributed to the purchase of the winning lottery ticket. In fact, the plaintiff testified that she had no idea as to the amount of money the Defendant was spending on lottery tickets after she moved out of the marital residence in December 1995. It can be said, however, that the plaintiff was responsible for more of the household responsibilities such as caring for Ronnie, Jr.

*The Court recognizes that this factor should be given more weight than all other factors to be considered.*

(Emphasis supplied).

With respect to affording the eighth factor the special weight it deserves in a case such as this, Judge Nolan scrupulously did precisely what the *Alston* case admonished should be done. There is no way that her decisional process could be characterized as an abuse of discretion in that regard.

### Procedural Distinction No. 2:
### The Careful Fashioning of the Monetary Award

In holding that an abuse of discretion occurred in the *Alston* case, the Court of Appeals noted that "[i]n this case, as in many other cases, once property was determined to be 'marital,' the circuit court may have succumbed to the temptation to divide the property equally." 331 Md. at 508, 629 A.2d 70. It

then analyzed the history of the Maryland statute, pointing out that the "Maryland Legislature specifically rejected the notion that marital property should presumptively be divided equally," and reiterated that " 'equitable' does not necessarily mean 'equal.' " *Id.*

Again heedful of the teachings of *Alston,* Judge Nolan did not "succumb to the temptation to divide the property equally." She diligently considered all of the intertwined factors and then carefully fashioned a monetary award that gave the wife 20% of the value of the several payments that the appellant had received prior to the divorce decree. She then further provided that the monetary award would be reduced to 10% of all future payments:

> For these reasons and based on an evaluation of all of the required factors, the Court will include in the monetary award to the plaintiff, 20% of the value of the defendant's current assets ... This part of the award therefore totals Seventy-nine Thousand, Seven–Hundred Eighty–Eight Dollars and Twenty Cents ($79,788.20). The Court makes this award in full recognition of the money already paid by the defendant to the plaintiff during the last two years since the defendant has been receiving annuity payments from his Powerball winnings.

> The Court will also include in the monetary award to the plaintiff and against the defendant 10% of the payments to be received by the defendant on May 1, 1998 and on each subsequent May 1, until the year 2015. The Court recognizes that each one of these payments to the defendant will be $846,000.00 Thus, each payment to the plaintiff shall be $84,600.00 The payment of the monetary award shall be made to the plaintiff. Thus, the monetary award totals $1,602,588.20.

We hold that Judge Nolan in this case, in making the monetary award, did everything that *Alston* enjoined her to do. We hold, therefore, that she did not abuse the discretion entrusted to her in this regard.

### The Tax Consequences of the Monetary Award

 Simply as a subcontention of his argument that Judge Nolan allegedly abused her discretion in making the monetary award, the appellant argues that when the potential income tax consequences of the award are taken into consideration the award represents "such an inequitable result as to amount to a clear abuse of discretion by the Chancellor." We do not agree.

At trial, both parties offered Certified Public Accountants as expert witnesses. Those witnesses testified as to the tax implications of the lottery winnings. The carefully crafted monetary award ordered by Judge Nolan clearly took those implications into consideration. Equally clearly, the monetary award ordered by the court did not constitute an abuse of discretion.

The appellant was due to receive his lottery annuity in twenty annual payments. As of the time the monetary award was ordered, two of those annual payments had already been made. The appellant appropriately was responsible for the taxes that were due on those payments. With respect to the first two payments that had already been made, the appellant explained that much of that income had gone into the purchase of other assets. He further explained that all of his then-current assets were directly traceable to the annuity payments. He requested the court, therefore, to evaluate the marital property as a whole and to make an appropriate division thereof. In the Opinion and Order of the Court, Judge Nolan explained how she handled the first two annuity payments as part of the total marital property:

> The Defendant urges the Court not to count the Defendant's 1996 and 1997 annuity payments in addition to the Defendant's other assets in determining the value of Defendant's property. Defendant argues that all of his current assets are directly traceable to either the 1996 or 1997 annuity payments. The Defendant further argues that he had no assets prior to winning the lottery and that it would be wrong to assign a value to the 1996 and 1997 proceeds as

well as the other property titled in the name of the Defendant such as his car, his bank accounts, and any of his other assets. The Court agrees with the Defendant, and will not consider the value assigned to the 1996 and 1997 annuity payments already paid to the Defendant. However, the Court will consider the value of all assets titled in the Defendant's name as of the date of the divorce when determining which property is marital and in determining the value of the property. These assets include various bank and brokerage accounts that are titled in his sole name. Said assets have been derived solely from the lottery winnings, and are, therefore, marital property.

Without serious dispute from either party, the evaluation of the marital property yielded a total value of $398,941. The monetary award to the appellee was for 20% of that marital property. The award, therefore, was in the amount of $79,-788.20. In view of the fact that essentially all of the marital property resulted from the payment of the first two lottery annuities, the award to the appellee represented, in effect, 20% of the net, post-tax lottery revenues.

With respect to the eighteen future lottery annuities, however, Judge Nolan summarized the testimony of the experts with respect to the tax consequences of that future income: "Income taxes were not determined with respect to those future payments because future tax returns and losses are too uncertain to take into account." With respect to those future payments, Judge Nolan ordered that from each annual annuity of $846,000, the appellee would receive 10%, to wit, $84,600.

It cannot be said that Judge Nolan abused her discretion in fashioning an award that took into consideration the past and future tax consequences of the lottery annuities. The monetary award to the appellee represented 20% of the net, post-tax revenue but only 10% of the gross, pre-tax future revenue. Nothing in that adjustment does violence to either *Williams v. Williams,* 71 Md.App. 22, 36–37, 523 A.2d 1025 (1987) or *Rosenberg v. Rosenberg,* 64 Md.App. 487, 523–26, 497 A.2d 485 (1985). We see no abuse of discretion in that division.

## Indefinite Alimony

The appellant's second contention is that Judge Nolan erred in awarding the appellee indefinite alimony in the amount of $3,500 per month. The focus of this contention is narrow. The dollar amount of the monthly alimony award is not in issue and we need give it no consideration. The appellant's contention, rather, is that under the circumstances of this case, a grant of indefinite alimony in any amount constituted an abuse of discretion.

With regard to the standard of review for alimony awards in general, the Court of Appeals, in *Tracey v. Tracey,* 328 Md. 380, 385, 614 A.2d 590 (1992), explained:

> An alimony award will not be disturbed upon appellate review unless the trial judge's discretion was arbitrarily used or the judgment below was clearly wrong. *This standard implies that appellate courts will accord great deference to the findings and judgments of trial judges, sitting in their equitable capacity, when conducting divorce proceedings.*

(Citations omitted; emphasis supplied); *Blaine v. Blaine,* 336 Md. 49, 74, 646 A.2d 413 (1994).

The *Tracey* Court pointed out that a significant change was made by the General Assembly with respect to alimony in 1980. The thrust of the change was to substitute rehabilitative alimony, where feasible, for indefinite alimony. *Tracey* also noted, however, that indefinite alimony remained appropriate under certain circumstances:

> At that same time, the 1980 Report proposed, and the legislature enacted, provisions acknowledging that *rehabilitative alimony will not be appropriate in every case.* These provisions are now embodied in *§ 11–106(c)* which *recognizes* in subsection (1) that some recipients will never be able to progress towards self-sufficiency, and in subsection *(2) that unconscionably disparate standards of living between former spouses after divorce may justify indefinite alimony.* The provisions of § 11–106(c) serve as a restraint upon the doctrine of rehabilitative alimony; they exist to

protect the spouse who is less financially secure from too harsh a life once single again.

328 Md. at 391–92, 614 A.2d 590 (citations omitted; emphasis supplied). *See also Doser v. Doser,* 106 Md.App. 329, 352–53, 664 A.2d 453 (1995); *Roginsky v. Blake–Roginsky,* 129 Md. App. 132, 141–43, 740 A.2d 125 (1999).

It is Family Law Article, § 11–106(c) which provides for indefinite alimony:

(c) *Award of indefinite period.*—The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress towards becoming self-supporting; *or*

(2) *even after the party seeking alimony would have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of the parties would be unconscionably disparate.*

(Emphasis supplied).

### Standard of Review for Indefinite Alimony Award Based on Finding of Unconscionable Disparity

In this case, Judge Nolan found that there would be an unconscionable disparity in the standards of living to be enjoyed by the appellant and the appellee following the divorce unless that disparity were bridged by an award of indefinite alimony. The appellant challenges that finding as clearly erroneous and the award based on that finding as an abuse of discretion. In *Roginsky v. Blake–Roginsky,* 129 Md.App. 132, 143, 740 A.2d 125 (1999), Judge Eyler discussed the appropriate standard of appellate review:

*A trial court's finding of unconscionable disparity* under subsection (c) *is a question of fact,* and *we review it under the clearly erroneous standard* contained in Md. Rule 8–131(c). Additionally, *a trial court has broad discretion in making an award of alimony,* and a decision whether to

award *it will not be disturbed unless the court abused its discretion.*

(Emphasis supplied).

In *Blaine v. Blaine,* 97 Md.App. 689, 708, 632 A.2d 191 (1993), *aff'd* 336 Md. 49, 646 A.2d 413 (1994), Judge Harrell pointed out that we had never reversed a trial judge's finding in that regard or a trial judge's award based on such finding:

> The existence of "unconscionably disparate" standards of living is a question of fact in the domain of the fact-finder. In fact, *the trial judge is given so much discretion on this issue that we have never reversed a trial court's award of indefinite spousal support* in a published opinion.

(Emphasis supplied). *See also Rock v. Rock,* 86 Md.App. 598, 612, 587 A.2d 1133 (1991)("This Court has yet to reverse an award of indefinite spousal support in a published opinion on the basis that the finding of unconscionable disparity was clearly erroneous.") *Roginsky v. Blake–Roginsky* now seems to be the exception that proves the rule.

### Disparity *Per Se*

 *Roginsky v. Blake–Roginsky,* 129 Md.App. at 146–47, 740 A.2d 125 (quoting *Blaine v. Blaine,* 336 Md. 49, 71–72, 646 A.2d 413 (1994)), incisively points out that "unconscionable disparity" is a two-headed phenomenon and that a trial judge may not, in making an award of indefinite alimony, rely automatically on a numerical disparity and ignore totally the aggravating characteristic of unconscionability. It is nonetheless true that the two factors are closely intertwined and that our case law has traditionally and historically focused primarily on the disparity factor. As *Roginsky v. Blake–Roginsky* itself points out, "The greater the disparity, the more likely that it will be found to be unconscionable, other factors remaining equal." 129 Md.App. at 147, 740 A.2d 125.

 Although a significant mathematical disparity in income, present and future, is not necessarily a sufficient condition to justify an award of indefinite alimony, it is nonetheless

a necessary condition. A review of those cases holding that a finding of disparity was not clearly erroneous is appropriate.

For comparison purposes, we will not, as the appellee would have us do, attribute to the appellant for the next eighteen years an income of $846,000 per year, his gross earnings from the lottery annuity even if he chooses not to work. We will reduce that amount by the $84,600 he will be required to pay the appellee as part of the monetary award and will further reduce that amount by his likely tax liability, based on his 1997 tax return. That would leave him a projected annual income of $432,912. By the same token, we will not, as the appellee would have us do, limit her likely annual earnings to her potential earning capacity of $25,000 but will add to it the $84,600 per year she will receive as part of her monetary award. That will yield a projected income to her of $109,600 per year. Even taking those figures most favorable to the appellant, the appellee's income would still represent only 25.3% of his income.

In *Tracey v. Tracey,* 328 Md. 380, 392–93, 614 A.2d 590 (1992), Chief Judge Murphy affirmed the decision of this Court, 89 Md.App. 701, 599 A.2d 856 (1991), and affirmed the ruling of the trial court that "the respective post-divorce standards of living of the parties [would be] unconscionably disparate" under circumstances where the wife's projected income was roughly 28% of the husband's projected income. He further noted that "self-sufficiency *per se* does not bar an award of indefinite alimony if there nonetheless exists an unconscionable disparity in the parties' standards of living after divorce."

In *Digges v. Digges,* 126 Md.App. 361, 730 A.2d 202 (1999), the wife's projected income was only 30% of the husband's projected income. It was noted that even if the wife obtained her master's degree her income would only rise about $5,000 per year and that the husband's "potential income exceeded [the wife's] by a factor of five." Judge Hollander, 126 Md. App. at 388, 730 A.2d 202, held for this Court:

[T]he trial court was entitled to find, from the evidence, an unconscionable disparity, based on appellant's potential income in excess of $100,000, as compared to appellee's projected income of $30,100.

In *Caldwell v. Caldwell,* 103 Md.App. 452, 464, 653 A.2d 994 (1995), the wife's projected income was 43% that of her husband. We nonetheless affirmed the trial judge's finding of unconscionable disparity. As Judge Wenner observed for this Court:

Moreover, it is clear from the record before us that the trial court awarded indefinite alimony after determining that the parties' lifestyles following the divorce were unconscionably disparate. Since the trial court considered the factors contained in § 11–106, we do not perceive that the trial court abused its discretion.

In *Blaine v. Blaine,* 97 Md.App. 689, 708, 632 A.2d 191 (1993), *aff'd* 336 Md. 49, 646 A.2d 413 (1994), the wife's income was equal to 22.7% of her husband's income. In affirming a finding of unconscionable disparity and the award based on it, Judge Harrell observed, "An award of indefinite alimony in this case is consistent with an objective litmus test referenced in many Maryland cases."

In *Broseus v. Broseus,* 82 Md.App. 183, 196–97, 570 A.2d 874 (1990), we affirmed an award of indefinite alimony based on a finding of unconscionable disparity in a case where the wife was earning 34.9% of the husband's income. In *Bricker v. Bricker,* 78 Md.App. 570, 576–77, 554 A.2d 444 (1989), we similarly affirmed an award of indefinite alimony where even "maximizing [the wife's] income while working excessive hours, [her] income was only 35% of that of appellant." In *Kennedy v. Kennedy,* 55 Md.App. 299, 307, 462 A.2d 1208 (1983), we affirmed a grant of indefinite alimony where the spouse earned 34% of her husband's annual income. *See also Benkin v. Benkin,* 71 Md.App. 191, 199, 524 A.2d 789 (1987); *Rogers v. Rogers,* 80 Md.App. 575, 592, 565 A.2d 361 (1989); *Zorich v. Zorich,* 63 Md.App. 710, 717, 493 A.2d 1096 (1985);

*Holston v. Holston,* 58 Md.App. 308, 322–23, 473 A.2d 459 (1984).

In terms of the sheer mathematics of the projected disparity, Judge Nolan's finding was not clearly erroneous that there was a disparity sufficiently large to be potentially unconscionable.

### The Aggravating Characteristic of Unconscionability

Both *Blaine v. Blaine,* 336 Md. 49, 646 A.2d 413 (1994) and *Roginsky v. Blake–Roginsky,* 129 Md.App. 132, 740 A.2d 125 (1999), remind us that a disparity in income is not enough to justify an award of indefinite alimony unless that disparity can fairly be characterized as "unconscionable." They remind us that "[a]limony should aid and provide an incentive for rehabilitation," 129 Md.App. at 148, 740 A.2d 125, and that the trial judge should always consider whether the spouse seeking such alimony can "be expected to make substantial progress toward becoming self-supporting." *Id.* Even where one spouse can make "substantial progress" in that regard, however,

> the court should determine under (c)(2) *if, when maximum progress is achieved,* in terms of reasonable foreseeability, *whether the standards of living will be unconscionably disparate.*

129 Md.App. at 148, 740 A.2d 125 (emphasis supplied).

Although the tilt of the Court may be to avoid an award of indefinite alimony when possible, *Roginsky v. Blake–Roginsky* recognizes that that goal is not always possible:

> *Only if* the evidence justifies a conclusion that . . . *after as much progress as is practicable, the result will be an unconscionable disparity, should indefinite alimony be awarded.*

129 Md.App. at 148, 740 A.2d 125 (emphasis supplied).

The dominant message of *Roginsky v. Blake–Roginsky* is that a finding of mathematical disparity will not automatically trigger an award of indefinite alimony and that the trial judge must carefully consider all of the twelve factors spelled out by § 11–106(b) that are pertinent to a particular case. The

interplay of those factors may frequently have a strong bearing on whether a particular disparity can fairly be found to be an unconscionable disparity.

The *Roginsky v. Blake–Roginsky* situation was, indeed, extreme and that case, the only published decision ever to reverse an award of indefinite alimony, can only be viewed in proper perspective if we keep its three unusual circumstances in mind. The first highly unusual feature of the case was that the wife did not even request indefinite alimony. She expressly "asked for an award of rehabilitative alimony until such time as [she] finished school and could 'get on her feet.'" 129 Md.App. at 145, 740 A.2d 125. Notwithstanding that request for rehabilitative alimony, the trial court, completely *sua sponte,* nonetheless "awarded indefinite alimony." It did so despite having offered the opinion that the wife "probably would become self-supporting," although it expressed no opinion as to "when that would occur." *Id.*

The second unusual feature is that the trial judge did not project his analysis of possible disparity forward to the time when maximum progress by the wife toward economic self-sufficiency could be expected. The factors that gave this Court the most concern in *Roginsky v. Blake–Roginsky* were the first and second, which required the trial court to consider "the ability of the party seeking alimony to be wholly or partly self-supporting" and "the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment." The wife in that case was only 28 years of age at the time of trial (the wife in this case was 42), enjoyed normal health, and was pursuing further education. In characterizing the failure of the trial judge to take the second factor of § 11–106(b) into consideration, Judge Eyler observed:

> [S]ubsection (2) requires a projection into the future, based on the evidence, beyond the point in time when a party may be expected to become self-supporting. *It requires a projection to the point when maximum progress can reasonably be expected.*

*In the case before us, the court made no such finding.* 129 Md.App. at 146, 740 A.2d 125 (citation omitted; emphasis supplied).

The third unusual feature of the *Roginsky v. Blake–Roginsky* case involves a consideration that is not expressly listed by § 11–106(b). The opinion nonetheless reminds us that as "the prefatory language in subsection (b) makes plain, the court is not restricted to a consideration of the factors that are expressly listed." 129 Md.App. at 143, 740 A.2d 125. As the opinion analyzed, 129 Md.App. at 147–48, 740 A.2d 125, one such factor that figured in the *Roginsky v. Blake–Roginsky* case was "the disparity in the standard of living [that] preexisted the marriage."

In that case, the husband, who was fifteen years older than the wife, held a doctoral degree in theoretical nuclear physics and was employed by the Federal Government before he ever met his future wife. She was a resident of Jamaica and he met her while travelling there. She was described as "poor and surviving by operating a small restaurant." Thinking she "had talent as a singer," he invited her to the United States where they then lived together. When she became pregnant, the two were married. There was self-evidently a substantial disparity in their respective standards of living prior to their entering into their marriage. The opinion points out, 129 Md.App. at 148, 740 A.2d 125, that the same post-divorce disparity may be viewed in quite different lights where 1) the parties enjoyed the same standard of living "during their marriage" and 2) "the disparity in the standard of living preexisted the marriage."

In this case, by contrast to *Roginsky v. Blake–Roginsky,* none of those three erosive forces undercuts the award of indefinite alimony made by Judge Nolan. In this case, the appellee very definitely and expressly sought indefinite alimony. It was not thrust upon her, unsolicited.

The second contrast is that Judge Nolan carefully examined each of the factors set out in § 11–106(b) and articulated her findings with respect to each. In strong distinction to the

failure of the trial judge in *Roginsky v. Blake–Roginsky* to project forward to the time "when maximum progress can reasonably be expected," Judge Nolan exhaustively considered the first and second factors, projected that the appellee's maximum income would not exceed $25,000 per year, and concluded that "no amount of education and training will bridge the economic gap between the parties." Judge Nolan's Opinion and Order recited in part:

**Alimony Factor # 1: The ability of the party seeking alimony to be wholly or partly self-supporting.**

... It is uncontroverted that the plaintiff was self-supporting after her separation and has a present earning capacity of $25,000. There was no evidence to show that with training she could earn more. Because the defendant has been providing her a combined child support and alimony payment of $5,000 per month, she has not worked in over a year and a half, devoting her time, energy and talents to caring for the child of the parties.

However, the defendant's standard of living will always be much higher than that of the plaintiff's standard of living. The plaintiff argued that the respective standards will be unconscionably disparate and the plaintiff will not be able to earn more than $25,000 per year given her education and employment history.

The defendant argues that the parties' standard of living while married was low, and that one of the purposes of alimony is to provide continuity to the dependent spouse so that the lifestyle the dependent spouse became accustomed to when the parties were living together is maintained. The defendant relies on *Melrod v. Melrod,* 83 Md.App. 180, 574 A.2d 1 (1990). The *Melrod* case does not go so far to say that unless the parties enjoyed a high standard of living during the marriage (and before the separation), then indefinite alimony is not warranted. All that *Melrod* states is that in that case, even though the marriage was of short duration, because the parties enjoyed a high standard of living during the marriage and that it would have an effect on the child who would go back an forth between a father

who can afford to live in luxury and a mother who could not, that the disparity in standards of living may be unconscionable.

If and when these factors with respect to a spouse's improved earning capacity are examined, as they were by Judge Nolan in this case, the issue may revert to a comparison of the numbers. If, notwithstanding the enhanced earning capacity, the respective incomes are still grossly disparate, the gross disparity may well turn out to be an unconscionable disparity. In very similar circumstances, Judge Rosalyn Bell concluded in *Rock v. Rock*, 86 Md.App. 598, 613, 587 A.2d 1133 (1991):

> Even if we assume she could make as much as $30,000 per year, that would only be 21.7 percent of Mr. Rock's 1988 income of $138,546.69. *In keeping with our prior decisions, this difference in income is substantial enough to uphold an award of indefinite spousal support.* . . . Ms. Rock's past earnings give little indication that the living standards of the parties will be anything other than unconscionably disparate. Moreover, if his income were reduced to $100,000, Ms. Rock would still only earn 30 percent of his income. As we have said, *grossly disparate income ordinarily translates into grossly disparate standards of living.*

(Emphasis supplied).

■ The fact that one spouse over a period of time can become self-supporting by no means precludes a finding of unconscionable disparity and an award of indefinite alimony based upon it. Under circumstances very similar to those at bar, this Court observed in *Melrod v. Melrod*, 83 Md.App. 180, 196, 574 A.2d 1 (1990):

> The court found that after a relatively brief period of rehabilitative alimony, Mrs. Melrod could be self-supporting. . . . Nevertheless, in view of the great disparity in wealth between the parties, it is obvious that *no matter how much rehabilitative alimony Mrs. Melrod receives and how much progress it will enable her to make toward becoming self-supporting, the respective standards of living of the parties will be greatly disparate.*

... [U]nless a revised monetary award will provide Mrs. Melrod with a great deal of income, the disparity in income and, therefore, standards of living, will be far greater than we held to be unconscionable in *Holston v. Holston* (1984) and *Rogers v. Rogers* (1989).... *[A] gross disparity in standards of living would ordinarily translate to an "unconscionable disparity" within the meaning of FL § 11-106(c)(2),* which authorizes an award of indefinite alimony on that basis.

(Citations omitted; emphasis in original and emphasis supplied).

In *Doser v. Doser,* 106 Md.App. 329, 354, 664 A.2d 453 (1995), Judge Hollander wrote to the same effect:

Assuming Ms. Doser ultimately will become self-sufficient, she will enter the labor pool for the first time at over fifty years of age, with physical limitations. Therefore, the court should consider the extent to which she will earn income comparable with Mr. Doser's salary. We recognize that the Court of Appeals has declined to adopt "a hard and fast rule regarding any disparity" in income for purposes of awarding indefinite alimony. Nevertheless, gross disparities in income levels frequently have been found unconscionable, and have supported the award of indefinite alimony.

(Citation omitted).

■ Another factor in determining whether the disparity in living standards would be unconscionable is that there was a son who was five years of age at the time of the divorce, with physical custody being shared by the parents. In determining whether a particular disparity in respective living standards is, indeed, an unconscionable disparity, the effect that the disparity may have on a child of the marriage is always to be considered. As Judge Bloom pointed out in *Melrod,* 83 Md. App. at 197, 574 A.2d 1:

*They have a child who will be spending a substantial part of his time with his mother, and it could not help but have some effect upon the child to go back and forth between a father who can afford to live in luxury and a mother who is*

*required to exercise some degree of frugality.* Weighing all these factors, we do not believe that the relatively short duration of the marriage would render a gross disparity in living standards an equitably conscionable one.

(Emphasis supplied).

It was obviously with that passage from the *Melrod v. Melrod* opinion in mind that Judge Nolan made the additional specific finding in the case now before us:

> In the case at bar, the parties will have a disparate standard of living. *There is a child involved, who will undoubtedly go back and forth between the father, who can afford to live in luxury, and the mother, who cannot.* The Court is aware of the defendant's testimony that he has recently signed a contract for a $370,000.00 home. The Court recognizes that such a home is not outrageously luxurious. However, it can be said that the defendant will live more luxuriously than the plaintiff.

(Emphasis supplied).

In yet a third regard, this case contrasts with *Roginsky v. Blake–Roginsky.* There was not in this case, as there was in that, a disparity in the standards of living that preexisted the marriage. This was not a case of someone from the chorus line briefly marrying a millionaire. Before the marriage and through the course of the marriage, both parties in this case enjoyed the same standard of living. The "windfall" that created the potential disparity did not occur until the appellant won the Powerball lottery after the parties had separated but before they had been divorced. In considering the third factor, Judge Nolan found:

> During the marriage, both parties earned approximately the same income. During the marriage, the parties acquired no real property while living together.

In considering the related fifth factor, she further found:

> As stated above, while the parties resided together, the parties earned equal income and each party's contribution to the family was fairly equal.

This was not a case where a preexisting, pre-marital disparity in standards of living can be invoked to justify a post-divorce disparity.

### The Interrelation of the Monetary Award and Indefinite Alimony

There was nothing improper in this case in awarding to the appellee both a monetary award and indefinite alimony. The two forms of relief are simply separate but closely intertwined ways of getting to the same result. As Judge Robert Bell (now Chief Judge of the Court of Appeals) wrote for this Court in *Williams v. Williams,* 71 Md.App. 22, 37, 523 A.2d 1025 (1987):

> An award of alimony must take into account the amount of any monetary award made and, conversely, a monetary award must be made in light of any alimony awarded. Alimony and a monetary award are thus significantly interrelated and largely inseparable. The decision to award one or both must be made after a consideration of each in their mutual context. Consequently, whether to award alimony, be it rehabilitative or permanent, must be decided in light of all the factors in the case, including any monetary award made.

(Citations omitted).

The Court of Appeals spoke to the same effect in *McAlear v. McAlear,* 298 Md. 320, 347, 469 A.2d 1256 (1984):

> [I]n determining the amount of a monetary award, equity courts must consider any award of alimony, while in determining the amount of alimony, equity courts must consider any monetary award.

The fact that Judge Nolan chose to fashion the total relief package which she deemed to be equitable by combining the two relief modalities was not an abuse of discretion. Indeed, an advantage to providing part of the relief through indefinite alimony may be that when, 18 years hence, the Powerball annuities run out, the appellee will still be provided with some protection. Although the annuities coming to the appellant

will, to be sure, run out at the same time, his multi-millions, wisely invested, should enable him to meet his alimony commitments without undue hardship.

### Child Support

■ The appellant's third contention that the trial court erred in awarding the appellee $1,500 per month in child support when both parties had a "surplus of income" and their child had "no unmet needs" is equally without merit.

Section 12–204 of the Family Law Article of the Maryland Annotated Code sets forth the schedule to be used by a trial court in computing the basic child support obligations to be divided among the parents. The schedule included in § 12–204 is based on the combined monthly adjusted actual income of the parties and only goes up to a combined monthly income of $10,000 per month. In cases such as this where the parties' combined monthly income level exceeds $10,000 per month, § 12–204(d) provides that the "court may use its discretion in setting the amount of child support." As with any determination left to the discretion of the trial court, we will not disturb the trial court's determination as to child support in this case absent an abuse of such discretion.

On December 14, 1998, a hearing was held before the trial court regarding the issue of child support during which testimony was presented from both parties. On February 4, 1999, after considering the evidence presented at that hearing, and reviewing the Memoranda of Law submitted by the parties, the trial court issued an Order requiring the appellant to pay $1,500 per month for child support. The Order also required the appellant to pay $14,000 to the appellee as contribution towards her attorney's fees. Both parties filed motions to modify that Order. As a result, on May 3, 1999, the trial court issued a Memorandum of Court denying all outstanding motions. In its Memorandum of Court, the trial court explained:

Upon consideration of the Defendant's Motion to Alter or Amend and for Clarification, the Court issues this memorandum to clarify the March 3, 1999 order for child support. The defendant has presented two issues for the Court to

consider. First, the defendant seeks clarification of the child support order. Second, the defendant requests reasons for the Court's awarding the plaintiff counsel fees.

Under § 12–202 of the Family Law Article of the Annotated Code of Maryland, a court shall use the child support guidelines in any proceeding to establish child support. An exception exists, however, for income which exceeds the highest level specified in the guidelines. *Under § 12–204, if the combined adjusted actual income exceeds the highest level specified in the guidelines' schedule (currently $10,-000), the court may use its discretion in setting the amount of child support. Because both the plaintiff and the defendant earn income substantially above the child support guidelines, this Court had discretion to establish the child support.*

*In determining child support in this case, the Court considered all of the arguments presented by the plaintiff and the defendant. The Court also noted that before any orders had been paid, the defendant paid the plaintiff $5,000 a month.* Following a request for alimony, the Court ordered the defendant to pay the plaintiff $3,500 a month. *Subsequent to the entry of this order, the defendant continued to pay an additional $1,500 a month for the care of the minor child. It wasn't until the plaintiff filed a Motion for Child Support, that the defendant ceased making the $1,500 payments.*

*Based on the parties Findings of Fact and Conclusions of Law, as well as the best interest of the child, the Court concludes that the order requiring the defendant to pay $1,500 a month was reasonable and fair.*

(Emphasis supplied). We see no abuse of discretion in that order.

### Attorney's Fees

The final issue before this Court is the trial court's award to the appellee of a portion of her attorney's fees. The appellant contends that the trial court erred in requiring him to pay any portion of the appellee's attorney's fees. The

appellee, on the other hand, contends that the trial court erred in limiting the award of attorney's fees to those amounts specifically attributable to her efforts to obtain alimony and child support. We are not persuaded by either party.

As previously stated, on February 4, 1999, the trial court issued the Order awarding the appellee $14,000 for contribution towards her attorney's fees. Both parties filed motions to modify that Order. In response, the trial court issued the Memorandum of Court discussed above and explained:

> *In awarding counsel fees, the Court carefully considered §§ 11–110(c) and 12–103(b).* The Court found that the plaintiff had a substantial justification for bringing the proceeding. The Court notes that the plaintiff requested an award of almost $50,000 to which the defendant objected. In the defendant's memorandum, the defendant argued that under the statutes, the plaintiff could only recover for attorney expenses paid in action for child support or alimony. *In accordance with the statute, the Court limited the attorney fees to amounts spent on alimony and child support proceedings.*

The decision of whether to award attorney's fees is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. We see no such abuse in this case.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.*